Argued and submitted August 28, affirmed November 6, 2002, petition for review
denied January 22, 2003 (335 Or 181)

## STATE OF OREGON,
### *Respondent,*

*v.*

## ADRIAN CAVETTE STAFFORD,
### *Appellant.*

## 00-02-31288; A113307

57 P3d 598

Walter J. Ledesma, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Brewer, Judge.

LANDAU, P. J.

### LANDAU, P. J.

Defendant appeals a judgment of conviction for possession and delivery of a Schedule II controlled substance. ORS 475.992. His single assignment of error is that the trial court should have granted his motion to suppress evidence of controlled substances discovered in a wadded up paper bag that he left in plain view on a stairway at the entry of a fourplex residence. The trial court concluded that the investigating officers violated no one's privacy interests in entering the stairway and that defendant had abandoned the bag. We affirm.

The relevant facts are uncontroverted. Officers Goldschmidt and Chastain investigated a noise complaint at a fourplex. At the front of the building is a set of stairs leading to an outdoor porch with three doors. The doors on the left and the right belong to the two ground-floor units, indicated by addresses at the side of each door. The center door is the primary access to the two upper-floor units, indicated by two addresses, one on each side of the door. The door has a mail slot, a lock plate, and a door knob. There is no doorbell.

As the officers approached the porch, they heard footsteps coming down what sounded like stairs from behind the center door. The center door opened, and defendant stood in the doorway facing the two officers. He had just come down the stairs from the residence of his girlfriend, Clark. He looked surprised to see the two officers. Upon seeing them, defendant closed the door slightly and leaned back appearing to "ditch" something behind him. Chastain heard a crumpling sound from behind the door. Defendant then reopened the door and stepped onto the porch, leaving the door slightly ajar. He walked down the stairs and, after a few words with Chastain, left the scene.

Meanwhile, Goldschmidt pushed the door further open and saw a stairwell and a light switch. At the top of the stairs was a landing, with one door on each side, and a light. Goldschmidt looked in the direction that he had seen defendant lean and saw a handrail and a wadded up brown paper bag stuffed between the handrail and the wall. Goldschmidt opened the bag and found what he suspected was crack

cocaine. He removed the cocaine from the bag and then replaced the bag in the railing.

Goldschmidt and Chastain then watched the building to see if defendant would come back to retrieve the cocaine. Defendant did not return. They did see, however, Clark leave her upstairs apartment, walk down the stairs, and retrieve the bag. The officers walked up the stairs to her apartment and questioned her. Clark told the officers that defendant had called her and asked her to get the bag from where he had left it.

Defendant was charged with possession and delivery of a Schedule II controlled substance. Before trial, he moved to suppress the evidence that Goldschmidt had obtained from the brown paper bag on the ground that the officers seized it in violation of his constitutional right to be free of unreasonable searches and seizures guaranteed by Article I, section 9, of the Oregon Constitution. According to defendant, Goldschmidt had no authority to look inside the center door and up the stairway and likewise had no authority to open the brown paper bag.

The trial court concluded that defendant was Clark's guest but that, as such, his privacy or possessory interest in the premises was no greater than Clark's. The court then concluded that, given the nature of the door and stairway, the residents had given the public implied consent to enter. The court noted that the addresses by the center door indicated that it was the door to the two upper-floor units, that the door was unlocked, and that there was no doorbell. Under the circumstances, the court reasoned, there was no reasonable way for any visitor to reach the second-floor units without going up a stairway that apparently was a common area open to the public for just that purpose. As for defendant's interest in the bag, the court concluded that, by leaving it on the stairs, defendant abandoned it and could not now complain about its seizure.

On appeal, defendant first complains that the trial court erred in concluding that Goldschmidt had implied consent to enter the stairway to the upper-floor units of the fourplex. The state argues that the trial court correctly concluded

that, given the physical layout of the premises, there was implied consent to enter.

■■  Article I, section 9, of the Oregon Constitution protects a privacy interest in land outside a dwelling. *State v. Dixon/Digby*, 307 Or 195, 211-12, 766 P2d 1015 (1988). A resident of a dwelling, however, impliedly consents to members of the public going to the front door, as long as the resident has not "manifested an intent to forbid the intrusion of casual visitors onto the property." *State v. Gabbard*, 129 Or App 122, 126-27, 877 P2d 1217, *rev den*, 320 Or 131 (1994) (citing *State v. Ohling*, 70 Or App 249, 688 P2d 1384, *rev den*, 298 Or 334 (1989)). At issue in this case is the location of the "front door." Defendant argues that it was the outside door on the porch and that any implied consent extended only to knocking on that door. The state argues that the outside center door was merely an entry to a common stairway that led to the front doors of the two upstairs units. In resolving that question in the case of a multi-unit dwelling, strict application of the curtilage doctrine is not determinative. *State v. Larson*, 159 Or App 34, 40, 977 P2d 1175, *rev den*, 329 Or 318 (1999). Instead, we look to "the physical layout of the living units and the residents' use of the area in question." *Id.*

**3.**  In this case, as the trial court noted, the center door clearly was the entryway to two upstairs units. It was marked by two address numbers, it was unlocked, and there was no doorbell, intercom, or buzzer for members of the public to use to let the upstairs residents know that they wished to gain entry. The stairway itself, leading up to a landing that was the location of the doors to each of the two upper units, confirms its function as a common entry for both of the upstairs units. The residents of the upstairs units neither posted signs nor took any other action to show that they intended to exclude visitors from the stairway. The trial court did not err in concluding that Goldschmidt had implied consent to walk through the center door on the porch.

Defendant next contends that the trial court erred in concluding that he had abandoned any constitutionally protected interest in the brown paper bag that he left in the stairway. The state argues that defendant indicated an intention to relinquish any interest in the bag by voluntarily

leaving it in a public place where members of the public would have been free to inspect it.

■■    The determination whether a defendant has relinquished a constitutionally protected interest in an item of personal property involves both factual and legal issues that we review in the same manner that we review other search and seizure questions arising under Article I, section 9. *State v. Cook*, 332 Or 601, 607, 34 P3d 156 (2001). Property law concepts of abandonment are relevant, but not always conclusive. *Id.*

■    In that regard, the cases suggest that several factors are pertinent: (1) whether a defendant separated himself or herself from the property as a result of police instruction, *Cook*, 332 Or at 609, or illegal police conduct, *State v. Morton*, 326 Or 466, 470, 953 P2d 374 (1998); (2) whether a defendant left the property on private, as opposed to public, property, *State v. Kendall*, 173 Or App 487, 491, 24 P3d 914 (2001); and (3) whether a defendant made any attempt to hide the property or in any other way manifest an intention to the police that he or she was attempting to maintain control over it, *State v. Dickson*, 173 Or App 567, 575, 24 P3d 909, *rev den*, 332 Or 559 (2001).

■    In this case, the police officers lawfully approached the center outside door as defendant walked outside. Seeing the officers, defendant spontaneously turned and left the brown paper bag behind him. He did not relinquish possession of the bag in response to any instruction from, or illegal conduct on the part of, the police. It is undisputed that he did so entirely on his own, without any prompting. Defendant also left the bag in a public entryway of a multi-unit dwelling, where members of the public were likely to see it and likely to inspect its contents. Finally, defendant made no attempt to hide the bag. He left it in plain sight of anyone who walked in the center door.

Thus, the facts of this case recall those in *Dickson*, in which the defendant dropped a backpack behind him in plain sight as officers arrived to execute a search warrant. He argued that, although he had relinquished possession of the backpack, he never intended to abandon all interest in it. We rejected the argument and concluded that the defendant had

abandoned any constitutionally protected interest in the backpack. We explained that the defendant had failed to manifest to the officers any indication that he was maintaining control over the backpack, such as hiding it. To the contrary, we explained, the defendant had

"dropped the backpack in plain sight of officers in close pursuit of him. That circumstance made it objectively likely that others would inspect the backpack; conversely, it also indicates that [the] defendant did not intend to reclaim the backpack."

*Id.* at 575. In addition, we noted, even assuming that the defendant had dropped the backpack in response to the arrival of the police, the fact remained that the police had arrived to execute a valid search warrant and that the defendant did not relinquish possession of the article in response to any unlawful police conduct. *Id.*

Defendant insists that in this case the "care" with which he placed the bag in the handrail demonstrates an intent to retain possession. However much care defendant took to wad up the paper bag, though, the fact remains that he left it in a place that was visible and accessible to any member of the public who entered the doorway. As in *Dickson*, defendant in this case made no attempt to hide the property from public view or give any indication that the wadded brown paper bag was anything other than discarded trash. The trial court did not err in concluding that defendant had abandoned any constitutionally protected interest in the bag.

Affirmed.