Argued and submitted July 21, 2004, affirmed March 30, 2005

STATE OF OREGON,
*Appellant,*

*v.*

THAD ROBERT GALLOWAY,
*Respondent.*
01-1195, A118599 (Control)

STATE OF OREGON,
*Appellant,*

*v.*

AMY LEIGH GALLOWAY,
*Respondent.*
01-1199, A118600

STATE OF OREGON,
*Appellant,*

*v.*

GINA MARIE HOESLY,
aka Gina Marie Barber,
*Respondent.*
C 0206-33361, A120107

(Cases Consolidated)

109 P3d 383

Daniel J. Casey, Assistant Attorney General, argued the cause for appellant. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Stephen A. Houze and Lawrence Matasar argued the cause and filed the joint brief for respondents Thad Robert Galloway and Amy Leigh Galloway. Stephen A. Houze argued the cause and filed the brief for respondent Gina Marie Hoesly.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

HASELTON, P. J.

## HASELTON, P. J.

These criminal cases, which have been consolidated for appeal, concern whether individuals retain interests protected by Article I, section 9, of the Oregon Constitution in garbage that they have left in garbage cans outside their homes for curbside collection.[1] In both cases, the trial courts held that the searches and seizures violated Article I, section 9, of the Oregon Constitution. The state appeals. For the following reasons, we affirm.

We base our statements of fact on the trial courts' factual findings. To the extent that the factual findings fail to address certain issues, we presume on appeal that the trial courts decided the facts in a manner consistent with their ultimate conclusions that the searches violated Article I, section 9. *See State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993) (discussing standard of review).

We turn first to *State v. Hoesly*. Defendant Hoesly was a Portland Police Officer. In response to a tip that Hoesly had been seen using drugs at parties, and based on information concerning drugs that had come to light through a domestic dispute between Hoesly and her boyfriend, other Portland police officers began an investigation into Hoesly's alleged drug use. Several officers drove to Hoesly's house in Gresham at about 9:30 p.m. on March 12, 2002. They noticed that Hoesly's neighbors had put garbage cans out for collection the following morning. They returned to Hoesly's house several hours later with the intention of searching her garbage. They saw a metal garbage can on the sidewalk, in the driveway area near the curb in front of Hoesly's house. They returned shortly thereafter in a pickup truck containing a second garbage can. One of the officers carried Hoesly's garbage can to the pickup truck and transferred Hoesly's garbage, which was inside black plastic bags, into the second can. He then returned Hoesly's can to its original location by the curb.

---

[1] Defendants have advanced no arguments under the Fourth Amendment to the United States Constitution. *See generally California v. Greenwood*, 486 US 35, 108 S Ct 1625, 100 L Ed 2d 30 (1988) (defendant had no Fourth Amendment expectation of privacy in garbage left at curbside).

The officers took Hoesly's garbage to the precinct, where they opened the black plastic bags and then searched and photographed the garbage. They found straws, baggies, and a pipe that bore traces of a powdery residue. They also found a small amount of leafy material. Also, they found a blood-soaked tampon. They sent all of those items to police laboratories for testing. The used tampon was cut in half, and half was tested for evidence of narcotics and the other half for DNA and seminal fluid. DNA was detected, but narcotics and seminal fluid were not. Some of the other items tested positive for methamphetamine, cocaine, and marijuana. DNA was detected on the pipe.

Based on the results of the garbage search, the officers then sought and obtained a warrant to search Hoesly's house. They executed the warrant and, as a result of that search, seized Hoesly's journal that allegedly contained incriminating statements. A subsequent warrant authorizing a DNA test of Hoesly resulted in her DNA being matched to that found on the used tampon and on the pipe.

In the *State v. Galloway* cases, an Oregon State Police officer initially sought the cooperation of the garbage collection company that had contracted to pick up the garbage from the Galloways' residence in Clatskanie. The company collected the Galloways' garbage in January 2001, turned it over to the police, and allowed them to search it. No evidence of criminal activity was found. In July 2001, the officer who had arranged for the January garbage search decided to do another garbage search, this time without the cooperation of the garbage company. He removed several closed, opaque bags from the Galloways' garbage can at the end of their driveway and brought the bags to the police station, where officers opened the bags and searched the garbage. They discovered a paper bag that smelled of marijuana and had a small amount of marijuana inside. The officer then obtained a search warrant based in part on the marijuana found in the garbage. During the search of the Galloways' residence, police discovered methamphetamine and a marijuana growing operation. The state ultimately charged both Galloway defendants with drug crimes.

In each of the above-described cases, defendants moved to suppress the evidence obtained from the seizures and searches of their garbage, as well as derivative evidence. In each case, they asserted that the police lacked probable cause for the seizures and searches and that the police conduct invaded their interests protected by Article I, section 9, of the Oregon Constitution. In each case, the state acknowledged that the police lacked probable cause, but took the position that defendants had abandoned any constitutionally cognizable privacy interest in their garbage by placing it in cans beside the road for collection. In each case, the trial courts rejected the state's argument and held that defendants had a constitutionally protected interest in their garbage cans and the contents of those cans. In *Hoesly*, the court stated:

> "[T]his court cannot conclude that the evidence supports the inference that the defendant intended to allow access to anyone but the garbage company. First, the defendant herself possessed the items that found their way into the trash container. Only she owned the contents of the can. She placed them into a can which she also owned. She had the right to retrieve those items until they were emptied into the hauler's truck. She placed the can in front of her own residence pursuant to the requirements of the city ordinance governing the collection of residential garbage. Second, she disposed of intimate personal items. As the facts of this case have established, the items contained in the can were, by their nature, extremely private. Third, she placed those items in a metal can with a lid securing its contents. The interior of the can was not visible to passersby. The can was closed. It was opaque. Fourth, she contracted only with the garbage company to remove the contents of the receptacle.

> "* * * * *

> "Individuals place items in their waste containers to dispose of those items. However, that person does not demonstrate, merely by placing a closed opaque garbage can at the curb for collection, a desire that its contents be opened to public inspection. The private nature of the tampon seized in this case attests to that. The nature of the contents of garbage containers is private, even when it is not contraband or evidence of a crime."

In the *Galloway* cases, the court held:

"In this case, the police removed the Defendants' property/garbage from a garbage can with a lid, that they owned. It was located at the end of their driveway along side a public roadway. There was no warrant, consent or probable cause. This was an illegal seizure and search. The motion to suppress will be granted."

■ The state appeals, arguing that the trial courts erred in suppressing the above-described evidence. The state's arguments are based on the proposition that, by placing their garbage in cans for curbside collection, defendants abandoned the contents of the cans and thus no longer had any protected privacy or possessory interests in the garbage. The state does not contend—nor did it contend in the trial courts—that the officers who seized and searched the garbage had probable cause to do so.

We begin with a general discussion of the relevant law. Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

■ When a seizure or search is carried out by the state in the absence of a warrant, the state has the burden of demonstrating by a preponderance of the evidence that the seizure or search did not violate Article I, section 9. *State v. Cook*, 332 Or 601, 608, 34 P3d 156 (2001). The state may do so by proving that an exception to the warrant requirement existed or, as the state has posited in the present cases, that no probable cause was required because the defendants lacked any possessory or privacy interests in the items seized and searched that are protected by Article I, section 9. The state bears the burden of demonstrating that a defendant lacked possessory or privacy interests in the property in question. *State v. Knox*, 160 Or App 668, 673, 984 P2d 294, *rev den*, 329 Or 527 (1999).

The crux of the state's arguments in these two cases is that garbage left in cans at the curb for collection is abandoned property in which the people who placed the garbage

there no longer have a protected privacy or possessory interest. Whether a person has relinquished a constitutionally protected interest in property involves both factual and legal questions and, to the extent that the questions are factual, we will not disturb trial courts' findings of historical fact if evidence supports them. *Cook*, 332 Or at 607.

In these cases, there are several facts that underlie the trial courts' findings that are relevant to our analysis and that are supported by evidence in the record: (1) Defendants contracted with garbage collection companies to collect their residential garbage at the curbs in front of their homes at specific times. (2) Defendants left their residential garbage at the curbs in front of their homes, pursuant to their agreements with garbage collection companies, inside opaque, closed garbage cans that were owned by defendants, from which the garbage collection companies were to remove the bags of garbage. Defendants' garbage cans, however, were not to be removed by the garbage collection companies. (3) The contents of the garbage cans were, in fact, refuse, *i.e.*, items that the defendants intended to discard.

The state contends that the trial courts erred in their holdings because those cases are controlled by *State v. Purvis*, 249 Or 404, 438 P2d 1002 (1968). In *Purvis*, the police received a tip from hotel employees that a certain hotel guest might be using drugs. A police officer then asked the hotel maids responsible for cleaning the guest's room to keep the trash from that room separate so that he could inspect it. The officer told the maids specifically to look for "homemade cigarettes." 249 Or at 405. The maids found on the floor of the room "a cigarette butt wrapped in a cardboard cover of a matchbook," which they turned over to the officer. *Id.* at 406.

In analyzing whether an unlawful search and seizure had occurred, the court first noted that, when the maids entered the defendant's room, they were privileged to do so. *Id.* The court further noted that the maids' privilege to enter the room did not extend to the police. *Id.* at 409 n 1. The court specifically stated that it was not deciding whether an unconstitutional search would have occurred had the officers instructed the maids to search beyond what they usually did in cleaning a room, and emphasized that "the direction given

to the maids [was] limited to the removal of items which would otherwise be removed in the normal process of cleaning the room." *Id.* at 409. The court stated:

"The evidence in this case would support a finding that the maids were authorized by defendant to clean the room when they did and to remove the trash, including the cigarette butt found on the floor of the room. Defendant's claim to privacy terminated with respect to items discarded by him and which he impliedly authorized to be hauled away. Certainly, once the discarded items were outside of the room they were in the public domain and open to inspection by anyone. And so, in the present case if the police had given no instructions to the maids and simply waited until the trash from room 705 was brought into the hallway then intercepted it, defendant would have had no legitimate claim to privacy in the items examined."

*Id.* at 410. The court concluded:

"The objects which defendant deposited in the ash trays and waste baskets can be regarded as abandoned property. * * * The cigarette butt found on the floor is not essentially different from the trash found in the ash trays and waste baskets. Although it may not have been actually abandoned, it was indistinguishable from the other items normally discarded by hotel guests and defendant, having at least impliedly authorized the removal of trash from the room, is not entitled to have the removal of the cigarette butt regarded any differently than the other trash in the room."

*Id.* at 411.

Were the present cases only about the January 2001, incident described in the *Galloway* cases, during which a garbage collector cooperated with police to search items that had previously been collected from the Galloways' garbage can, these cases might be more like *Purvis*. The facts in these cases, however, are significantly different. As explained below, we conclude that some key factual differences make this case distinguishable from *Purvis*.

In *Purvis*, as noted above, the defendant had authorized maids to enter his room and remove any garbage found there. In these cases, defendants had authorized garbage collectors to remove the lids from defendants' garbage cans,

remove the contents from the cans, and haul the contents away for disposal. In *Purvis*, the police intercepted the garbage after the person who was authorized by the defendant to remove the items had done so and had agreed to turn the garbage over to the police.[2] In these cases, by contrast, the police did not intercept the garbage after the garbage collectors authorized by defendants to remove the garbage had done so. Rather, the police unilaterally seized and opened defendants' garbage cans as they sat on the curbs awaiting collection by the garbage collectors and seized and searched the contents. That is a key distinction. *See State v. Campbell*, 306 Or 157, 167, 759 P2d 1040 (1988) ("Whether police conduct is a search does not turn on whether its object could be discovered by conduct that is not a search.").

The state's focus on appeal is on whether defendants retained a privacy or possessory interest in garbage, given that they manifested an intent to have it hauled away. That focus overlooks defendants' possessory interests in their garbage cans. The state does not argue that, by placing a garbage can at curbside, a person abandons any protected possessory interest in the can itself. *Accord State v. Kendall*, 173 Or App 487, 491-92, 24 P3d 914 (2001) (defendant did not abandon privacy and possessory interests in bicycle left outside while he went to nearby house). Garbage cans, like bicycles or cars, are commonly left on or near the street by individuals and, even if those individuals do not take the precaution of securing such items with locks, we would not infer from their unlocked state that the individuals who placed them there intended to abandon them. Although an individual who wanted to *ensure* his or her possessory interest in such items might lock them, failure to do so simply does not constitute abandonment.

---

[2] The circumstances in *Greenwood* were similar to those in *Purvis*. There, the police obtained the defendant's garbage from the defendant's regular trash collector after the collector had picked up the bags of garbage that the defendant had left on the curb in front of his house. *Greenwood*, 486 US at 37. In *Greenwood*, the Court did not address whether the defendant had a possessory interest in the trash that continued up to the point of collection. *Compare* 198 Or App at 595-97 (in circumstances of these cases, defendants retained protected possessory interest in contents of their garbage cans until collection by the designated collection companies).

Thus, in all of these cases, the police began by seizing an item in which defendants had possessory interests—their garbage cans. Consequently, the searches of defendants' garbage involved at least incidental infringements on their possessory rights in their garbage cans, as the police opened and moved those cans in order to obtain the garbage located inside. The fact that the police invaded defendants' possessory interests in their garbage cans in order to obtain defendants' garbage distinguishes this case from *Purvis*—as noted above, the court in *Purvis* carefully explained that the maids invaded no protected interests of the defendant by removing the garbage from his room because they were authorized to do so. Here, by contrast, defendants and their garbage collectors were authorized to open defendants' garbage cans; the police were not.

We need not, however, decide whether that infringement—taking off the lids of closed containers of which defendants retained possession in order to remove their contents—would, by itself, be enough to require suppression. That is so because we conclude that, under the circumstances of these cases, defendants retained possessory interests in the contents of their garbage cans while the cans sat at the curb outside defendants' residences awaiting collection until collection actually occurred. Thus, defendants retained protected possessory interests in the contents of their garbage cans at the time the police seized those contents without a warrant.[3]

In these cases, defendants had arrangements with garbage collection companies that specified where the garbage cans were to be placed for collection and when collection would occur. Defendants abided by those agreements by placing their garbage inside of garbage cans and placing the cans in the locations required for curbside collection.

Thus, defendants placed their garbage cans and the contents of those cans in a particular place in order to facilitate a limited purpose, *viz.*, pick-up and disposal by a designated collection company. Defendants did not implicitly

---

[3] Given our analysis and disposition, we need not, and do not, determine whether, for purposes of Article I, section 9, defendants also retained a protected privacy interest in the contents of their garbage cans after they were set out for collection.

authorize anyone else to paw through their garbage and view or take items of garbage. Rather, they placed their garbage in cans by the curb with the understanding that the garbage collection company—and only the garbage collection company—would remove the bags from the cans and carry the bags away.

The state relies on *State v. Stafford*, 184 Or App 674, 57 P3d 598 (2002), for the proposition that defendants necessarily abandoned the contents of their garbage cans by leaving them at curbside for collection by garbage collectors. That reliance is misplaced. In *Stafford*, a defendant who observed several police officers in the outdoor entryway to an apartment building dropped a brown paper bag in a stairwell and then left the area. *Id.* at 676. We held that the defendant had abandoned the bag and its contents. *Id.* at 680. In so holding, we observed that the stairwell was a part of the common area of the apartments and that the defendant did not return to collect the bag. *Id.* at 678-79. Ultimately, we identified several factors as being relevant to our abandonment analysis:

> "(1) whether a defendant separated himself or herself from the property as a result of police instruction * * * or illegal police conduct * * *; (2) whether a defendant left the property on private, as opposed to public, property * * *; and (3) whether a defendant made any attempt to hide the property or in any other way manifest an intention to the police that he or she was attempting to maintain control over it[.]"

*Id.* at 679 (citations omitted).

The state argues that *Stafford* controls in these cases because (1) the police neither instructed defendants to put out their garbage to be hauled away nor engaged in any illegal conduct that caused defendants to put out their garbage to be hauled away; (2) defendants left their garbage cans within several feet of the curb, either on sidewalks or near public rights-of-way; and (3) defendants did not hide their garbage and, by leaving the garbage at the curb for curbside collection, manifested that they were not attempting to maintain control over it.

We do not apply *Stafford* so simplistically or mechanically. First, the state's proposition that defendants

did not separate themselves from their property as a result of police conduct begs the question of whether, or to what extent, the defendants separated themselves from their property at all under these circumstances. As noted above, defendants maintained a possessory interest in the cans in which the garbage was located. *See* 198 Or App at 594-95.

Second, with respect to whether the garbage cans were left on private or public property, the records in these cases do not unambiguously establish whether the garbage cans were on defendants' own property, on areas of defendants' property over which there were public easements, or actually in the street. However, it is undisputed that—as is required for curbside residential garbage collection—the garbage cans were outside the residences of the individuals who had contracted to have their garbage hauled away. Thus, while the cans may have been on or near public streets, they were in locations that clearly indicated their relationship to the residences—and, as noted above, there is no argument that the cans had been abandoned by being placed in front of defendants' residences.

Finally, and contrary to the state's contention, defendants did, in fact, manifest an intent to retain control over the cans and their contents *vis-à-vis* the world at large. By securing garbage inside a closed, opaque container such as a trash can, contracting with a garbage collection company to take it away, and placing the cans, with their contents, at the specified collection point in anticipation of collection, defendants manifested an intent to maintain control over the contents until such time as the garbage company took it away.

Two simple hypotheticals highlight the flaws in the state's position generally, and its reading of *Stafford* particularly. In the first circumstance, a homeowner leaves a box labeled "Free Stuff, Help Yourself" in front of his or her house. In the second, the homeowner leaves a box labeled "Stuff To Be Picked Up By Goodwill Only" in front of the house. Under the state's analysis and reading of *Stafford*, the two situations are materially indistinguishable—both would evince abandonment because, in both circumstances, the

homeowner voluntarily left the box and its contents in a publicly accessible area outside his or her home and did not manifest any intention to retain control over the box and its contents.

The two circumstances are, however, materially different. In the first, the homeowner has, in fact, abandoned any possessory interest in the contents of the box—the world at large is free to open the box and take the contents. In the second, the homeowner has relinquished her possessory interests in the contents of the box only *vis-à-vis* Goodwill, at least until Goodwill takes possession of the contents. *See Purvis*, 249 Or at 410.

Here, defendants' circumstances are directly analogous to the second hypothetical, with the trash collection companies in the same position as Goodwill. Defendants placed their garbage in closed containers in front of their residences, manifesting to objectively reasonable third parties that the contents were to be collected only by a designated entity. Thus, defendants retained protected possessory interests in the contents of their garbage cans until that collection occurred.

In summary, defendants placed their garbage inside garbage cans, in which they retained possessory interests, and placed those cans in locations clearly connected with their residences pursuant to agreements with garbage collection companies with whom they had contracted for removal of the bags of garbage. Under those circumstances, the police infringed on defendants' Article I, section 9, possessory interests in their garbage cans and in the contents of those cans. Accordingly, the trial courts correctly granted defendants' suppression motions.

Affirmed.