2006-NMCA-098

142 P.3d 933

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Kevin GRANVILLE, Defendant–Appellee.**

**No. 25,005.**

Court of Appeals of New Mexico.

June 9, 2006.

Certiorari Granted, No. 29,890, Aug. 22, 2006.

Patricia A. Madrid, Attorney General, Santa Fe, NM, M. Anne Kelly, Assistant Attorney General, Albuquerque, NM, for Appellant.

John Bigelow, Chief Public Defender, Trace L. Rabern, Assistant Appellate Defender, Santa Fe, NM, for Appellee.

## OPINION

CASTILLO, Judge.

{1} This case deals with the sufficiency of a search warrant. The determining question, however, is whether Article II, Section 10, of the New Mexico Constitution prohibits the warrantless search of an individual's garbage bags placed in trash containers located in an alley behind a residence. Because we conclude that existing precedent and New Mexico's distinct characteristics support an expectation of privacy in one's refuse put out for collection, we depart from federal Fourth Amendment jurisprudence and hold that Article II, Section 10, precludes the warrantless search of garbage in these circumstances. Accordingly, we affirm the trial court.

## I. BACKGROUND

{2} The State appeals the trial court's grant of a motion to suppress filed by Defendant, Kevin Granville. The trial court ruled that the affidavit in support of the search warrant was insufficient to establish probable cause. The State contends that the court erred because the affidavit established probable cause on its face.

{3} At the hearing on Defendant's motion, Lea County Drug Task Force Agent Jon Martinez testified to the following facts. On January 29, 2004, he and Agent James Torres seized sealed garbage bags from trash containers located in the alley behind the residence of Alton Granville, Defendant's brother. The officers placed the bags in the back of a pickup and removed the bags from the premises. At their office, Agents Martinez and Torres untied the bags, searched the contents, and found items known to be used by drug traffickers. The officers discovered plastic sandwich bags with the corners removed, small pieces of burnt aluminum foil, and a small plastic bag containing trace amounts of a white powdery substance that field-tested positive as a cocaine-based substance. They also discovered a gas bill in Defendant's name with the address of the residence and two other documents with the same address but in the names of two other persons.

{4} Later that same day, Agent Martinez obtained a search warrant for the residence. Probable cause for the search warrant rested on Agent Martinez's affidavit, which provided two types of information: tips obtained from three unidentified informants and evidence obtained from the garbage search.

{5} The subsequent search of the home revealed illegal drugs. Defendant was charged with one count of possession of a controlled substance, crack cocaine, in violation of NMSA 1978, § 30–31–23(D) (1990) (amended 2005), and one count of possession of a controlled substance, marijuana, in violation of Section 30–31–23(B).

{6} Defendant filed two motions to suppress. The first motion alleged that Defendant's rights, under the Fourth Amendment of the United States Constitution and Article II, Section 10, of the New Mexico Constitution, were violated because, inter alia, Defendant's expectation of privacy in the contents of the garbage bags was reasonable. Defendant asserted that the search of the garbage bags was an illegal state action and therefore impermissibly tainted the search warrant and subsequent actions taken in reliance on the search warrant. Defendant's second motion to suppress expressly incorporated his first motion. In his second motion, Defendant also alleged that the informants' information in the affidavit did not satisfy the credibility and reliability prongs of the *Aguilar–Spinelli* test or meet the staleness test. *See State v. Cordova*, 109 N.M. 211, 214, 217, 784 P.2d 30, 33, 36 (1989) (retaining the *Aguilar–Spinelli* test for probable cause based on hearsay); *State v. Gonzales*, 2003–NMCA–008, ¶ 11, 133 N.M. 158, 61 P.3d 867 ("Probable cause to issue the warrant requires a factual showing that, at the time of the application for the warrant, evidence relating to the commission of a crime exists on the premises sought to be searched. Thus, information which is 'stale' will not support a finding of probable cause." (citations omitted)); *see also Spinelli v. United States*, 393 U.S. 410, 415–17, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), *abrogated by Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), *abrogated by Gates*, 462 U.S. at 238, 103 S.Ct. 2317.

{7} After a hearing, the trial court granted Defendant's second motion to suppress. The court concluded that the affidavit did not adequately establish probable cause because the information from the informants did not meet the *Aguilar–Spinelli* test. When asked by the State to take into consideration the evidence discovered in the trash search, the trial court replied, "I don't feel that it comes up to probable cause; I don't. You certainly have leave to take it up on appeal if you believe that it does. But at this juncture, I don't believe that the affidavit is sufficient to issue the search warrant on." Without fur-

ther elaboration, the trial court issued an order granting Defendant's motion to suppress.

{8} The State appeals the trial court's grant of Defendant's motion. As the State contended below, it contends on appeal that the trial court erred when it invalidated the warrant because the warrant established probable cause on its face. Although the State concedes that the informants' information alone was insufficient, the State argues that the evidence obtained in the search of the trash was adequate to establish probable cause and that the informants' information served to corroborate the trash evidence. The State's position is that the affidavit, viewed as a whole, was sufficient to establish probable cause.

## II. DISCUSSION

### A. Standard of Review

{9} We examine de novo, as a matter of law, the sufficiency of an affidavit that supports a search warrant. *In re Shon Daniel K.*, 1998–NMCA–069, ¶ 8, 125 N.M. 219, 959 P.2d 553. Threshold constitutional issues are also reviewed de novo. *State v. Snyder*, 1998–NMCA–166, ¶ 6, 126 N.M. 168, 967 P.2d 843. Because the State concedes that the informants' information was insufficient to establish probable cause, we first consider the state constitutional issue and determine whether the evidence discovered in the garbage search can be used to establish probable cause.

### B. State Constitutional Claim

#### 1. Interstitial Analysis

{10} When examining a state constitutional issue, we must apply the three-step interstitial approach set out in *State v. Gomez*, 1997–NMSC–006, ¶¶ 19, 22–23, 122 N.M. 777, 932 P.2d 1. *State v. Cardenas–Alvarez*, 2001–NMSC–017, ¶ 6, 130 N.M. 386, 25 P.3d 225. We ask first whether the right asserted by Defendant is protected by the Fourth Amendment. *Cardenas–Alvarez*, 2001–NMSC–017, ¶ 6, 130 N.M. 386, 25 P.3d 225. If the right is protected by the Fourth Amendment, we proceed no further. *Gomez,*

1997–NMSC–006, ¶ 19, 122 N.M. 777, 932 P.2d 1; *see also Cardenas–Alvarez,* 2001–NMSC–017, ¶ 6, 130 N.M. 386,, 25 P.3d 225. If, however, the right is not protected by the Fourth Amendment, we look to preservation. *Cardenas–Alvarez,* 2001–NMSC–017, ¶¶ 5, 10–11, 130 N.M. 386, 25 P.3d 225. If the state constitutional claim was properly preserved, we continue our analysis to determine whether one of three established reasons exists to justify diverging from federal precedent. *Id.* ¶ 14. This final step is addressed by asking if (a) the federal analysis is flawed or undeveloped, (b) structural differences exist between federal and state government, or (c) distinctive state characteristics exist that would support the departure. *Id.; Gomez,* 1997–NMSC–006, ¶¶ 19–20, 122 N.M. 777, 932 P.2d 1. If we can answer yes to one of these three questions, our state constitution may provide greater protections than its federal counterpart. We begin our discussion by reviewing Fourth Amendment precedent.

### a. Fourth Amendment Protection

{11} It is well established that the Fourth Amendment does not protect an individual from a warrantless search of garbage set out for collection. *California v. Greenwood,* 486 U.S. 35, 37, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988); *United States v. Long,* 176 F.3d 1304, 1308 (10th Cir.1999). In coming to this conclusion, the Supreme Court used the two-prong test from *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). *Greenwood,* 486 U.S. at 39, 108 S.Ct. 1625. The first prong of the *Katz* test asks if a person has exhibited an actual (subjective) expectation of privacy; the second question is whether that expectation is one that society is prepared to recognize as reasonable. 389 U.S. at 361, 88 S.Ct. 507 (Harlan, J., concurring). The *Greenwood* Court acknowledged the respondents' assertions that they had exhibited a subjective expectation of privacy. 486 U.S. at 39, 108 S.Ct. 1625. However, the Supreme Court found it unnecessary to determine whether this assertion of actual expectation of privacy was sufficient; the Court's conclusion that society would not find this expectation of privacy reasonable

was dispositive. *Id.* at 41, 108 S.Ct. 1625. Recognizing that the Fourth Amendment does not protect an individual's privacy in garbage set out for collection, we proceed with the interstitial analysis to determine whether Defendant preserved his state constitutional claim.

### b. Preservation of the State Constitutional Claim

{12} The State argues that Defendant has not adequately preserved his state constitutional claim because he invoked no ruling on his first motion to suppress, which argued the issue, and made no Article II, Section 10, argument at the hearing on his second motion to suppress. As the appellee, however, Defendant was not strictly required to preserve his arguments; we affirm if the trial court decision was right for any reason, as long as the arguments in favor of affirmance are not fact based such that it would be unfair to entertain them for the first time on appeal without notice to the appellant. *Piano v. Premier Distrib. Co.,* 2005–NMCA–018, ¶ 17, 137 N.M. 57, 107 P.3d 11. We proceed to address Defendant's preservation of the issue to show that it would not be unfair to the State to rule on the state constitutional issue. We hold that Defendant adequately preserved the issue.

{13} When existing precedent construes a state constitutional provision as providing broader protection than its federal counterpart, the preservation of the state constitutional claim requires no more than preservation of any other claim for appellate review. *Gomez,* 1997–NMSC–006, ¶ 22, 122 N.M. 777, 932 P.2d 1; *see* Rule 12–216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked, but formal exceptions are not required[.]"). A defendant must assert the legal issue below and develop the facts necessary for the trial court to rule on the issue. *Gomez,* 1997–NMSC–006, ¶ 22, 122 N.M. 777, 932 P.2d 1.

{14} The state constitutional claim at issue here is based on Article II, Section 10, which has been construed to provide broader protections than the Fourth Amendment for the

past fifteen years. *See Cardenas–Alvarez,* 2001–NMSC–017, ¶¶ 2, 5, 130 N.M. 386, 25 P.3d 225 (holding that the extended detention of the defendant at a border checkpoint was unlawful under Article II, Section 10); *Gomez,* 1997–NMSC–006, ¶¶ 39, 44, 122 N.M. 777, 932 P.2d 1 (rejecting the federal bright-line automobile exception to the warrant requirement and providing greater protections under Article II, Section 10); *Campos v. State,* 117 N.M. 155, 156, 157–59, 870 P.2d 117, 118, 119–21 (1994) (holding that Article II, Section 10, requires a warrantless arrest to be based on both probable cause and sufficient exigent circumstances); *State v. Attaway,* 117 N.M. 141, 149–50, 870 P.2d 103, 111–12 (1994) (holding that Article II, Section 10, requires officers to knock and announce before entering by force to execute a search warrant), *modified on other grounds, State v. Lopez,* 2005–NMSC–018, ¶¶ 13–20, 138 N.M. 9, 116 P.3d 80 (clarifying the exigency exception); *State v. Gutierrez,* 116 N.M. 431, 432, 863 P.2d 1052, 1053 (1993) ("[T]he good-faith exception is incompatible with the guarantees of [Article II, Section 10,] that mandate the issuance of search warrants only upon probable cause."); *Cordova,* 109 N.M. at 214, 217, 784 P.2d at 33, 36 (retaining the *Aguilar–Spinelli* test for probable cause based on hearsay after the test was abandoned by the United States Supreme Court in *Gates* ); *State v. Rodarte,* 2005–NMCA–141, ¶ 1, 138 N.M. 668, 125 P.3d 647 ("[h]olding that the greater privacy protections afforded by Article II, Section 10[,] . . . do not permit arrests for non-jailable offenses on the basis of probable cause alone"), *cert. granted,* 2005–NMCERT–012, 138 N.M. 773, 126 P.3d 1137; *State v. Madalena,* 121 N.M. 63, 69, 908 P.2d 756, 762 (Ct.App.1995) (concluding that the eight factors used by New Mexico courts to determine the reasonableness of a roadblock impose additional and stricter guidelines than the test used by the United States Supreme Court). Accordingly, Defendant need only to have alerted the trial court to the legal issue and to have developed the facts necessary to rule on that issue. *Gomez,* 1997–NMSC–006, ¶ 22, 122 N.M. 777, 932 P.2d 1.

{15} Defendant raised the state constitutional issue in his pleadings below. His first motion to suppress asserted that Article II,

Section 10, prohibited the warrantless search of his garbage. Defendant's second motion to suppress, ruled on by the trial court, expressly incorporated his first motion to suppress. Thus, Defendant's identification of Article II, Section 10, as the source of his right is sufficient to preserve the legal issue for appellate review. *See Gomez,* 1997–NMSC–006, ¶¶ 22, 30, 122 N.M. 777, 932 P.2d 1 (concluding that the defendant's failure to cite to cases construing the state provision more broadly did not prejudice the state because "[t]he trial court is charged with knowing and correctly applying established New Mexico precedent"). In addition, Agent Martinez testified to specific facts necessary for a ruling, and the trial court ruled after consideration of those facts and argument from both counsel. To the extent that the State believes that Defendant should have testified as to his subjective expectation of privacy, our discussion below, including our heavy reliance on *State v. Hempele,* 120 N.J. 182, 576 A.2d 793 (1990), makes Defendant's testimony unnecessary. *See id.* at 801 (noting that a subjective expectation of privacy is not determinative because it is irrelevant once the objective test is met).

{16} Based on the record, we conclude that the trial court clearly had an opportunity to rule on the issue and was armed with the legal assertions and facts necessary to do so. *See id.* ¶¶ 22–23. *See generally id.* ¶¶ 24–29 (concluding that the reasons for the preservation rule had been satisfied because the opposing party had an opportunity to respond and because the trial court had an opportunity to rule on the issue). Thus, Defendant's state constitutional argument was preserved. We now evaluate whether one of three established reasons exists to diverge from federal precedent.

### c. Reasons for Departing from Federal Precedent

{17} We may depart from federal precedent if federal analysis is flawed or undeveloped, if structural differences exist between state and federal government, or if New Mexico has distinct state characteristics supporting such a departure. *Cardenas–Alvarez,* 2001–NMSC–017, ¶ 14, 130 N.M. 386, 25

P.3d 225; *Gomez,* 1997–NMSC–006, ¶¶ 19–20, 122 N.M. 777, 932 P.2d 1. We focus our discussion on the third basis for departure—distinct state characteristics.

## 2. Distinct State Characteristics

▮▮▮▮ {18} Individual states may construe their own constitutions to impose more stringent constraints on police conduct. *Greenwood,* 486 U.S. at 43, 108 S.Ct. 1625. In New Mexico, the courts are charged with the task of determining whether our constitution provides greater protection than the Fourth Amendment. *Gutierrez,* 116 N.M. at 444, 863 P.2d at 1065; *see Cordova,* 109 N.M. at 217, 784 P.2d at 36. In all cases that invoke Article II, Section 10, the ultimate question is reasonableness. *See, e.g., Attaway,* 117 N.M. at 149, 870 P.2d at 111; *Rodarte,* 2005–NMCA–141, ¶ 14, 138 N.M. 668, 125 P.3d 647. We avoid bright-line, per se rules in determining reasonableness; instead, we consider the facts of each case. *Rodarte,* 2005–NMCA–141, ¶ 14, 138 N.M. 668, 125 P.3d 647. When we interpret our state constitution, neither federal precedent nor our interpretation of federal law is controlling, though the reasoning of these opinions can inform our result. *See Cordova,* 109 N.M. at 212 n. 1, 784 P.2d at 31 n. 1.

▮▮▮▮ {19} New Mexico courts independently analyze "state constitutional guarantees when federal law begins to encroach on the sanctity of those guarantees." *Gutierrez,* 116 N.M. at 440, 863 P.2d at 1061. Generally, our state constitution protects the fundamental premise that each person in this state should be free from unwarranted intrusions by the government. *Id.* at 444, 863 P.2d at 1065. Specifically, Article II, Section 10, provides greater protections for privacy. *Rodarte,* 2005–NMCA–141, ¶ 1, 138 N.M. 668, 125 P.3d 647; *see Attaway,* 117 N.M. at 151, 870 P.2d at 113 ("Article II, Section 10[,] embodies the disparate values of privacy, sanctity of the home, occupant safety, and police expedience and safety."); *cf. Hempele,* 576 A.2d at 800 (noting that the United States Supreme Court establishes the floor of constitutional protection). When interpreting Article II, Section 10, the New Mexico Supreme Court has emphasized its strong belief in the protection of individual privacy, *Attaway,* 117 N.M. at 150 n. 6, 870 P.2d at 112 n. 6, and has recognized New Mexico's corresponding preference for the warrant requirement. *Campos,* 117 N.M. at 159, 870 P.2d at 121; *see Gomez,* 1997–NMSC–006, ¶ 36, 122 N.M. 777, 932 P.2d 1; *cf. Hempele,* 576 A.2d at 800 (stating that the United States Supreme Court must exercise caution when considering warrant requirements that would be imposed on every state). Today, we ask whether the privacy rights of Article II, Section 10, protect a right otherwise unprotected by the Fourth Amendment. New Mexico has not decided this question as it relates to an individual's privacy right in the individual's garbage set out for collection.

{20} While a majority of courts have upheld searches and seizures of garbage, their reasoning varies. Historically, earlier courts analyzed garbage search cases by using abandonment concepts, *see, e.g., United States v. Dela Espriella,* 781 F.2d 1432, 1437 (9th Cir.1986); *People v. Fata,* 139 Misc.2d 979, 529 N.Y.S.2d 683, 687 (Rockland County Ct.1988), or by asking whether the police intruded on the defendant's curtilage; *see, e.g., Long,* 176 F.3d at 1308; *Everhart v. State,* 274 Md. 459, 337 A.2d 100, 115 (1975); *State v. Goebel,* 654 N.W.2d 700, 703–04 & n. 1 (Minn.Ct.App.2002). After the United States Supreme Court in *Greenwood* applied the *Katz* expectation of privacy test to a garbage search, other courts began to utilize the *Katz* test in relation to garbage searches. *See, e.g., State v. DeFusco,* 224 Conn. 627, 620 A.2d 746, 750 (1993). As we explained in paragraph 11, the *Greenwood* Court focused on the second prong of the *Katz* test—society's reasonable expectation of privacy in garbage. *Greenwood,* 486 U.S. at 40–41, 108 S.Ct. 1625.

{21} Courts holding that there is no reasonable expectation of privacy in garbage set out for collection have relied on the rationale in *Greenwood.* They believe it is unreasonable to have an expectation of privacy in garbage when it is readily accessible to any member of the public. *See id.; People v. Hillman,* 834 P.2d 1271, 1277–78 (Colo.1992) (en banc) (concluding that the defendant had no reasonable expectation of privacy in the

garbage when he placed it adjacent to the sidewalk and thus made the garbage readily available to the public); *DeFusco,* 620 A.2d at 751 (concluding that the state constitution did not prohibit warrantless searches because an expectation of privacy was not objectively reasonable); *State v. Jackson,* 937 P.2d 545, 546 (Utah Ct.App.1997) ("[T]he Utah Constitution does not prohibit the warrantless search and seizure of garbage left for streetside collection[.]"). Thus, because a person cannot reasonably expect that any privacy in his garbage will not be invaded by these potential intruders, he cannot reasonably expect that any privacy in his garbage will not be invaded by police. *DeFusco,* 620 A.2d at 752–53 ("A person's reasonable expectations as to a particular object cannot be compartmentalized so as to restrain the police from acting as others in society are permitted or suffered to act.").

{22} In contrast to *Greenwood* and its progeny, courts concluding that there is a reasonable expectation of privacy point to the indicia of personal, private affairs that can be found in an individual's garbage. *See State v. Tanaka,* 67 Haw. 658, 701 P.2d 1274, 1276–77 (1985) (noting that to hold that there is no reasonable expectation of privacy would mean police, without reason, could learn of an individual's activities, beliefs, and associations); *State v. Goss,* 150 N.H. 46, 834 A.2d 316, 319 (2003) (concluding that warrantless searches are prohibited by the state constitution because "[c]lues to people's most private traits and affairs can be found in their garbage" (internal quotation marks and citation omitted)); *Hempele,* 576 A.2d at 814 (concluding that the state constitution "applies to the search but not to the seizure of a garbage bag left on the curb for collection"); *State v. Morris,* 165 Vt. 111, 680 A.2d 90, 93 (1996) (concluding that its state constitutional provision requires a warrant to search garbage because such an invasion of privacy should be made by a neutral officer of the court, rather than the police); *State v. Boland,* 115 Wash.2d 571, 800 P.2d 1112, 1114–16 (1990) (en banc) (concluding that specific language of the state constitutional provision, "[n]o person shall be disturbed in his private affairs," prohibited warrantless searches of garbage). *See generally* Kimberly J. Win-

bush, *Searches and Seizures: Reasonable Expectation of Privacy in Contents of Garbage or Trash Receptacle,* 62 A.L.R.5th 1 (1998 & Supp.2005) (categorizing cases by dispositive facts and legal principles). In reviewing the cases for and against an expectation of privacy in garbage, we believe that the approach taken by the *Hempele* court is closest to the type of analysis required under New Mexico law.

{23} The *Hempele* opinion can be divided into five parts, all in support of that court's conclusion that an expectation of privacy in garbage was reasonable. First, like the New Mexico Constitution, the New Jersey Constitution provides greater privacy protections than the Fourth Amendment. *Hempele,* 576 A.2d at 799. Second, the contents of a person's garbage are evidence of his most private traits and intimate affairs. *Id.* at 802. Third, the important issue is whether the contents of one's garbage are concealed from plain view. *Id.* at 804. Fourth, neither public access nor the trash collector's access to garbage left out for collection negates one's reasonable expectation of privacy. *Id.* at 805, 807. Finally, regulation of garbage does not negate one's reasonable expectation of privacy; to the contrary, regulation supports that expectation. *Id.* at 807–08. We follow the basic outline in evaluating the issue under New Mexico law.

### a. Greater Privacy Protections of the State Constitution

{24} As we discussed previously, our Supreme Court has interpreted Article II, Section 10, to provide greater privacy protections than the Fourth Amendment. Our Supreme Court has emphasized New Mexico's strong preference for warrants in order to preserve the values of privacy and sanctity of the home that are embodied by this provision. *See Gomez,* 1997–NMSC–006, ¶ 36, 122 N.M. 777, 932 P.2d 1; *Attaway,* 117 N.M. at 151, 870 P.2d at 113. The warrant requirement protects an individual from unreasonable searches and seizures by ensuring that a neutral party determines that probable cause exists, thereby justifying a search that might otherwise be unreasonable. *Gomez,* 1997–NMSC–006, ¶ 38, 122

N.M. 777, 932 P.2d 1; *Morris,* 680 A.2d at 93. Through the warrant procedure, we prevent law enforcement "from allowing the competitive pressures of fighting crime to compromise their judgment about whether or not to carry out a given search." *Gomez,* 1997–NMSC–006, ¶ 38, 122 N.M. 777, 932 P.2d 1. The principle behind this measure of protection is equally relevant when an individual's privacy is invaded by a garbage search. We conclude that New Mexico's strong preference for warrants supports the protection of an individual's expectation of privacy in his refuse and ensures that any governmental invasion of inarguably private affairs is reasonable. *See id.* ¶ 36 ("In interpreting our search and seizure provision, [our Supreme] Court consistently has expressed a strong preference for warrants.").

### b. Evidence of Most Private Traits and Affairs

{25} The contents of a person's garbage are evidence of his most private traits and intimate affairs. *Hempele,* 576 A.2d at 802. A search of one's garbage can reveal eating, reading, and recreational habits; sexual and personal hygiene practices; information about one's health, finances, and professional status; details regarding political preferences and romantic and other personal relationships; and a person's own private thoughts, activities, beliefs, and associations. *Id.* at 803 (citing *Greenwood,* 486 U.S. at 50, 108 S.Ct. 1625 (Brennan, J., dissenting), and *Tanaka,* 701 P.2d at 1276–77). " '[A]lmost every human activity ultimately manifests itself in waste products[,] and . . . any individual may understandably wish to maintain the confidentiality of his refuse.' " *Hempele,* 576 A.2d at 802 (quoting *Smith v. State,* 510 P.2d 793, 798 (Alaska 1973)) (first alteration in original).

{26} The facts of *State v. Galloway,* 198 Or.App. 585, 109 P.3d 383 (2005), provide some insight into the invasion of privacy that would be permissible if garbage searches were not protected by our state constitution. The defendant in a case consolidated with *Galloway* was a police officer suspected of drug use. *Id.* at 384. In an effort to obtain evidence regarding the defendant's drug activities, officers removed black plastic garbage bags from the defendant's garbage can, which had been placed for collection on the sidewalk in the driveway area near the curb in front of her house. *Id.* In their search of the defendant's garbage, the officers found evidence of drug use and a blood-soaked tampon. *Id.* The used tampon was tested for drugs, DNA, and seminal fluid. *Id.* DNA was detected on the tampon and on a pipe used for drugs. *Id.* Officers used this evidence to obtain a search warrant for the home, where they seized a journal containing allegedly incriminating statements. *Id.* A subsequent warrant was issued for the defendant's DNA, which was matched to DNA detected on the tampon and the pipe. *Id.* Faced with these circumstances, the court in *Galloway* held that the search of the defendant's garbage was a violation of the state constitution. *Id.* at 389. This *Galloway* case vividly illustrates the extent to which an individual has privacy interests in garbage. We believe that most people would greatly object if faced with the reality of another person's snooping in their private affairs by sorting through their garbage. "Given the secrets that refuse can disclose, it is reasonable for a person to prefer that his or her garbage remain private." *Hempele,* 576 A.2d at 803.

### c. Contents of Garbage Concealed from Plain View

{27} There is a presumption that an expectation of privacy is reasonable when garbage is in a container that conceals the contents from plain view. *Id.* at 804. New Mexico case law supports this presumption. In *State v. Bolton,* 111 N.M. 28, 40–41, 801 P.2d 98, 110–11 (Ct.App.1990), this Court held that the defendant had no reasonable expectation of privacy in the underside of his truck because it was in plain view of the officer while he was standing by his own vehicle. *See id.* at 42, 801 P.2d at 112 (declining to rule that an individual can never have a reasonable expectation of privacy in the underside of a vehicle); *see also State v. Sutton,* 112 N.M. 449, 455, 816 P.2d 518, 524 (Ct.App.1991) (concluding that the defendant could have no expectation of privacy because he did not take any steps to assert his interest in keep-

ing the plots private and because the "officers were able to walk up and view the plots unimpeded from a public road"), *modified on other grounds, Gomez,* 1997–NMSC–006, ¶ 32, 122 N.M. 777, 932 P.2d 1; *State v. Chort,* 91 N.M. 584, 585, 577 P.2d 892, 893 (Ct.App.1978) (concluding that it was "not ... unreasonable" to have an expectation of privacy when the defendant's marijuana garden was shielded by a five-foot fence). We believe that when an individual places garbage in a garbage can or an opaque bag, he keeps personal items from plain view and thereby exhibits an expectation of privacy that is not unreasonable. *Cf. Katz,* 389 U.S. at 361, 88 S.Ct. 507 (Harlan, J., concurring) ("Thus a man's home is, for most purposes, a place where he expects privacy, but objects, activities, or statements that he exposes to the 'plain view' of outsiders are not 'protected' because no intention to keep them to himself has been exhibited."); *State v. Zelinske,* 108 N.M. 784, 786, 779 P.2d 971, 973 (Ct.App.1989) ("A person's expectation of privacy as regards a container cannot be determined by the nature of the container."), *overruled on other grounds by State v. Bedolla,* 111 N.M. 448, 455, 806 P.2d 588, 595 (Ct.App. 1991).

### d. Public Access to Garbage

{28} A reasonable expectation of privacy is not negated merely because the public or the trash collector has access to garbage left for collection. *Hempele,* 576 A.2d at 805, 807. What a person "seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Katz,* 389 U.S. at 351–52, 88 S.Ct. 507. The contents of garbage bags are not exposed to the public, even though the bags may be placed in an area accessible to the public. *Hempele,* 576 A.2d at 807.

{29} Those cases that conclude there is no reasonable expectation of privacy primarily rely on the concept that "garbage placed at the curb is subject to intrusion by a variety of people," as well as "dogs, raccoons, or other creatures[, who] may intrude upon and expose the contents of garbage that has been placed for collection in an accessible area." *DeFusco,* 620 A.2d at 752; *accord*

*Greenwood,* 486 U.S. at 40–41 & nn. 2–4, 108 S.Ct. 1625; *Hillman,* 834 P.2d at 1277–78. *Greenwood* further notes that the defendants "placed their refuse at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through [the] trash or permitted others, such as the police, to do so." 486 U.S. at 40, 108 S.Ct. 1625. We do not believe that this is determinative. Article II, Section 10, protects citizens from governmental intrusions, not intrusions from members of the general public, the trash collector, or nearby wildlife. *See, e.g., Campos,* 117 N.M. at 159, 870 P.2d at 121; *see also Boland,* 800 P.2d at 1114 ("Given that the fundamental purpose of the state constitution is to govern the relationship between the people and their government rather than to govern the relationship between private parties, it also follows that we concern ourselves only with the reasonableness of governmental intrusion into a private individual's garbage and not the reasonableness of such intrusions by private individuals." (citation omitted)).

{30} Moreover, just because a possibility exists—that a person or an animal will invade an individual's garbage—does not mean that an individual cannot have a reasonable expectation that the possibility will not occur. *See Greenwood,* 486 U.S. at 54, 108 S.Ct. 1625 (Brennan, J., dissenting) ("The mere *possibility* that unwelcome meddlers *might* open and rummage through the containers does not negate the expectation of privacy in their contents any more than the possibility of a burglary negates an expectation of privacy in the home[.]"); *Hempele,* 576 A.2d at 805 (stating that public access to garbage placed curbside for collection is no different from public access to a letter placed in a curbside mailbox for the postal carrier); *Morris,* 680 A.2d at 99 ("[T]he mere possibility that unwelcome animals or persons might rummage through one's garbage bags does not negate the expectation of privacy in the contents ... any more than ... the possibility that an operator or party-line caller will listen in on a telephone conversation negates an expectation of privacy in the contents of the conversation[.]").

{31} An individual puts garbage out for collection "with the understanding that the garbage collection company—and only the garbage collection company—[will] remove the bags from the cans and carry the bags away." *Galloway*, 109 P.3d at 388. We are persuaded by the Oregon court's realistic assessment of an individual's expectations and the reasons behind those expectations. The *Galloway* court noted that the defendants had arrangements with garbage collection companies that specified when and where collection would occur. *Id.* It was reasonable for the defendants to expect that by their placing the garbage in a particular place and manner for the purpose of disposal, only the garbage collection companies would remove the bags and would do so for the express purpose of disposal. *See id.* The mere possibility that another person or animal might forage through one's garbage that is contained in an opaque plastic bag does not negate the reasonable expectation that the garbage will, without invasion, make its way into the garbage truck and the final destination—the garbage dump. *See Greenwood*, 486 U.S. at 54–56, 108 S.Ct. 1625 (Brennan, J., dissenting); *Goss*, 834 A.2d at 319; *Boland*, 800 P.2d at 1116 (concluding that the defendant expected the trash would be picked up by a licensed garbage collector). This expectation is reasonable, particularly due to the extensive regulation of refuse disposal.

### e. Regulation of Garbage

{32} Existing regulation of garbage and refuse supports, rather than precludes, a reasonable expectation of privacy. *Hempele*, 576 A.2d at 807–08. *See generally, e.g.,* NMSA 1978, §§ 3–48–1 to –7 (1965, as amended through 2003) (providing municipalities with the authority to regulate refuse); NMSA 1978, §§ 4–52–1 to –10, 4–52–11 to –15 (1959, as amended through 1981) (Refuse Disposal Act) (providing counties with the authority to create refuse disposal districts and thereby regulate refuse); NMSA 1978, §§ 4–56–1 to –3 (1967, as amended through 1971) (providing counties with the authority to regulate the collection and disposal of refuse); NMSA 1978, §§ 74–9–1 to –42 (1990, as amended through 1995) (Solid Waste Act).

Our Supreme Court, in *City of Hobbs v. Chesport, Ltd.*, 76 N.M. 609, 417 P.2d 210 (1966), addressed the breadth of the statutes that granted municipalities the authority to regulate refuse. "The authority to enforce a general system [of garbage removal], and the authority to establish health measures, is authority for the municipality to place garbage collection and disposal exclusively with itself." *Id.* at 613, 417 P.2d at 213. Moreover, the municipality can determine how refuse is to be handled; an individual "cannot do as he wishes with his garbage." *Id.; see also Seay Bros., Inc. v. City of Albuquerque*, 601 F.Supp. 1518, 1522 (D.N.M.1985) (relying on *Chesport* to rule that the City of Albuquerque, under its authority to exclusively regulate garbage collection and disposal, could properly displace the competition). We believe that allowing the State to conduct a warrantless search of refuse set out for collection when an individual is required by law to dispose of his refuse in a specific place, time, and manner is inconsistent with the privacy protections provided by Article II, Section 10. *See Hempele*, 576 A.2d at 808 ("Surely the [s]tate has the authority to regulate the disposal of garbage; but if pursuant to that authority it compels people to alter their conduct, it may not then contend that that conduct no longer deserves constitutional protection."); *Morris*, 680 A.2d at 95 ("Most people today have little choice but to place their garbage at curbside for collection by public or private trash haulers."); *Boland*, 800 P.2d at 1117 (stating that while the necessary regulation of garbage must compel a person to reasonably expect that a licensed trash collector will remove his garbage, "this expectation does not also infer an expectation of governmental intrusion").

### 3. New Mexico's Expectation of Privacy in Garbage Set Out for Collection

{33} We agree with the court in *Hempele*. In light of the greater privacy protections provided by Article II, Section 10, as interpreted by our Supreme Court, we conclude that an expectation of privacy in garbage set out for collection is reasonable in New Mexico. With our holding today, we acknowledge the specific language "homes

and effects" in Article II, Section 10. *See generally Sutton,* 112 N.M. at 454–55, 816 P.2d at 523–24. As we detailed above, the contents of an individual's refuse are evidence of intimate and private affairs that are conducted within the home, the most protected of areas. It is reasonable for an individual to have an expectation of privacy in these effects of the home. Moreover, we believe that "unconstrained government inspection of people's trash is not consistent with a free and open society." *Morris,* 680 A.2d at 94. Thus, we conclude that an individual in New Mexico has a reasonable expectation of privacy in his garbage placed for collection in an opaque container and that this privacy interest is protected by Article II, Section 10.

{34} We emphasize that this ruling does not preclude a search of an individual's garbage by law enforcement. We merely conclude that a search of an individual's garbage must be supported by probable cause and a warrant, unless exigent circumstances exist or another doctrine, such as plain view, negates the individual's expectation of privacy. As stated in *Cordova,* New Mexico's warrant process is flexible enough to accommodate more stringent requirements imposed in reliance on the broader protections provided by our constitution. 109 N.M. at 216, 784 P.2d at 35; *cf. Hempele,* 576 A.2d at 800 ("[W]e are fortunate to have in New Jersey a procedure that allows for the speedy and reliable issuance of search warrants based on probable cause."). Accordingly, the resulting warrant requirement for garbage searches is not as great a burden in New Mexico as it could be in other states. *Cf. Hempele,* 576 A.2d at 801.

{35} We note that in the record, there are no facts establishing the existence of an exception to the warrant requirement. *See State v. Duffy,* 1998–NMSC–014, ¶ 70, 126 N.M. 132, 967 P.2d 807 ("The State bears the burden of proving the existence of exigent circumstances."); *see also Gomez,* 1997–NMSC–006, ¶¶ 39–40, 122 N.M. 777, 932 P.2d 1; *Bolton,* 111 N.M. at 40–41, 801 P.2d at 110–11 (holding that viewing the underside of the defendant's truck was not a search because the underside was in plain view); *Hempele,* 576 A.2d at 804 (concluding that

there is a presumption of an expectation of privacy in the contents of an opaque garbage bag because the contents are concealed from plain view). Thus, we conclude that the warrantless search of Defendant's refuse in these circumstances was prohibited by Article II, Section 10, of the New Mexico Constitution.

**C. Sufficiency of the Search Warrant**

{36} As a result of our ruling today, the evidence obtained from the garbage search cannot be used to corroborate the information from the informants. Moreover, the State concedes that the informants' information standing alone is not sufficient to establish probable cause for the search warrant. Thus, we conclude that the affidavit was insufficient to establish probable cause for a search warrant. *See State v. Rubio,* 2002–NMCA–007, ¶ 5, 131 N.M. 479, 39 P.3d 144 ("Probable cause for the issuance of a search warrant must be established from within the four corners of the supporting affidavit.").

**III. CONCLUSION**

{37} We affirm the trial court's grant of Defendant's motion to suppress, and we remand for further proceedings in light of this opinion.

{38} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and JAMES J. WECHSLER, Judges.