Certiorari Granted, June 8, 2011, Docket No. 33,014

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2011-NMCA-061

Filing Date:  April 7, 2011

Docket No.  29,470

STATE OF NEW MEXICO,

        Plaintiff-Appellant,

v.

KEVYN CRANE,

        Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY
Stephen K. Quinn, District Judge

Gary K. King, Attorney General
Anita Carlson, Assistant Attorney General
Santa Fe, NM

for Appellant

Law Works L.L.C.
John A. McCall
Albuquerque, NM

for Appellee

OPINION

FRY, Judge.

{1}     The State appeals the district court's order suppressing evidence discovered by the warrantless search of sealed garbage bags left for collection in a motel dumpster.  We consider whether we should extend *State v. Granville*, 2006-NMCA-098, 140 N.M. 345, 142 P.3d 933, in which this Court recognized an individual's right to privacy in sealed garbage left for collection in an alley behind a single-family home.  We are not persuaded

1

by the State's attempts to distinguish the expectation of privacy held by a motel guest who places garbage in a motel dumpster from the expectation of privacy held by an individual who places garbage outside of a residence. We affirm the suppression of the evidence.

**BACKGROUND**

{2}     The following facts are undisputed. Police received an anonymous call from a patron of the Choice Inn reporting a strong chemical odor emanating from an adjacent motel room. Suspecting methamphetamine production, Agent Waylon Rains and Agent Steven Wright from the Clovis drug task force traveled to the motel to investigate. Agent Rains did not detect a chemical smell from outside Room 316, the reported motel room. From information provided by the motel staff, Agent Rains discovered that the registered guest in that room was Christopher Kidd. While conducting surveillance of Room 316 from the motel parking lot, Agent Rains observed an individual later identified as Kidd walking from that motel room to the motel's dumpster and throwing away an open box. Agent Rains went to the dumpster, removed the box, which had contained latex gloves, and found it unsealed and empty. While he was checking the box behind a cinder block wall, Agent Rains heard more garbage being discarded into the dumpster, although he was unable to view the individual discarding the garbage, and he heard a motel room door close shut. Presuming it was Kidd again discarding garbage, Agent Rains returned to the dumpster, found two sealed black plastic garbage bags, and removed them. Although they could not see the contents of the bags, the agents smelled a strong chemical odor. Without first obtaining a warrant, the agents opened and searched the bags. They found several items used to manufacture methamphetamine, including empty boxes for pseudoephedrine pills, an empty can of acetone, empty cans of Heet gas line antifreeze, and several matchbook covers.

{3}     Based on this evidence, Agent Wright left the Choice Inn to obtain a search warrant. Agent Rains stayed at the motel to conduct further surveillance and saw two men leave Room 316. The men were later identified as Kidd and Defendant Kevyn Crane. Kidd carried a large red suitcase out of the motel room, placed it in a white car that drove up, and got in the car. Defendant got into a different vehicle that was parked in the motel lot. Agent Rains stopped Defendant, Kidd, and the driver of the white car, explained that police had received a tip about methamphetamine production, and asked them for identification. Defendant told the agent that he was staying in Room 316 and that he had to return to the room to retrieve his identification. Agent Rains accompanied him and did not see any signs of a meth lab, but he smelled the same chemical odor that had emanated from the garbage bags.

{4}     Agent Wright returned with a search warrant, which permitted the agents to search Room 316 and the cars. They found additional manufacturing items and paraphernalia, including digital scales, glass pipes, baggies, muriatic acid, Coleman fuel, acetone, and a jar of bi-layered liquid. Agents also found personal letters to Defendant stored in a box in the closet. Defendant was charged with trafficking methamphetamine and possession of drug paraphernalia.

2

**{5}** Defendant filed a motion based on *Granville* to suppress the evidence found in the dumpster. The district court held an evidentiary hearing and granted Defendant's suppression motion as to the items sealed in the black plastic bags. In its findings of fact and conclusions of law, the district court determined that Defendant was sharing the motel room with Kidd and decided based on *Granville* that Defendant had a reasonable expectation of privacy in the motel room and the garbage discarded from the room. The district court therefore concluded that the agents could not search the refuse thrown in the dumpster without a warrant. Pursuant to NMSA 1978, Section 39-3-3(B)(2) (1972), the State appealed from this ruling.

## DISCUSSION

**{6}** On appeal, the State argues, as it did below, that Defendant did not have an expectation of privacy that society is prepared to recognize as reasonable. The State does not argue that an exception to the warrant requirement applied. The parties agree, in light of *Granville* and the arguments raised in district court, that the relevant privacy interest should be examined under the New Mexico Constitution. As a result, our inquiry is limited to the reasonableness of a motel guest's expectation of privacy in his or her garbage under the New Mexico Constitution. *See Granville*, 2006-NMCA-098, ¶¶ 9, 34-35 (analyzing only the state constitutional claim of privacy in garbage from one's residence where the state did not argue the existence of another exception to the warrant requirement). We analyze these constitutional questions under a de novo standard of review. *Id.* ¶ 9.

### The *Granville* Decision

**{7}** In *Granville*, this Court applied the interstitial approach announced in *State v. Gomez*, 1997-NMSC-006, ¶¶ 19, 22-23, 122 N.M. 777, 932 P.2d 1, and decided to depart from the Fourth Amendment jurisprudence. *Granville*, 2006-NMCA-098, ¶¶ 10-19, 33. We rejected the federal notion that "it is unreasonable to have an expectation of privacy in garbage when it is readily accessible to any member of the public." *Id.* ¶¶ 21-23 (explaining the rationale of *California v. Greenwood*, 486 U.S. 35 (1988), and courts holding consistent with *Greenwood*, which permit warrantless searches and seizures of garbage). The Court in *Granville* adopted the approach taken by *State v. Hempele*, 576 A.2d 793, 799-808 (N.J. 1990), the seminal case recognizing a reasonable expectation of privacy in residential garbage left for collection under a state constitution. *See Granville*, 2006-NMCA-098, ¶¶ 15, 22-23. The New Mexico Constitution, *Granville* explained, provides greater privacy protections and recognizes that the contents of an individual's garbage reveals evidence of a person's most private traits and intimate affairs. *See id.* ¶¶ 25-26. The Court determined that when an individual conceals garbage from plain view by placing his or her personal items in a garbage can or an opaque bag, that action "exhibits an expectation of privacy that is not unreasonable." *Id.* ¶ 27.

### The State's Arguments

3

**{8}**     The State contends the present case contains a critical distinction from the facts of *Granville* that precludes the state constitutional protection, which is that  the search was of garbage found in a motel dumpster, not garbage found in garbage cans outside a home. Given this circumstance, the State makes essentially one argument with two sub-parts:  (1) a person placing garbage in a motel dumpster has a lesser expectation of privacy than he or she would have if the garbage were placed outside a home because (a) that person has less control over the disposition of the garbage and (b) the public has far greater access to garbage placed in a motel dumpster.  The State maintains that, taken together, these circumstances establish that a person does not have a reasonable expectation of privacy in garbage placed in a motel dumpster.

**Framework of Analysis**

**{9}**     Before addressing the State's arguments, we consider the applicability of the two-prong analysis of privacy expectations set forth in *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring), which considers first whether the defendant has an actual or subjective expectation of privacy and, second, "whether that expectation is one that society is prepared to recognize as reasonable."  *Granville*, 2006-NMCA-098, ¶ 11.  As this Court noted in *Granville*, since the decision in *Greenwood*, "other courts began to utilize the *Katz* test in relation to garbage searches."  *Granville*, 2006-NMCA-098, ¶ 20.  We further observed that the *Greenwood* Court passed over the first prong of the test and focused on the second prong—whether society would recognize as reasonable an expectation of privacy in garbage.  *Granville*, 2006-NMCA-098, ¶¶ 11, 20.  In addition, the New Jersey Supreme Court in *Hempele* rejected the two-prong *Katz* test and concluded that the New Jersey Constitution "requires only that an expectation of privacy be reasonable."  *Hempele*, 576 A.2d at 802.

**{10}**     We agree with the court in *Hempele* and conclude that under Article II, Section 10 of the New Mexico Constitution, the requisite inquiry is whether the expectation of privacy in a particular instance is reasonable; therefore, we need not consider whether Defendant had an actual expectation of privacy in the garbage.  The United States Supreme Court itself has acknowledged that a subjective expectation of privacy can be irrelevant in certain cases.

> For example, if the [g]overnment were suddenly to announce on nationwide television that all homes henceforth would be subject to warrantless entry, individuals thereafter might not in fact entertain any actual expectation or privacy regarding their homes, papers, and effects. Similarly, if a refugee from a totalitarian country, unaware of this Nation's traditions, erroneously assumed that police were continuously monitoring his telephone conversations, a subjective expectation of privacy regarding the contents of his calls might be lacking as well. In such circumstances, where an individual's subjective expectations had been conditioned by influences alien to well-recognized Fourth Amendment freedoms, those subjective expectations obviously could play no meaningful role in ascertaining what

4

the scope of Fourth Amendment protection was. In determining whether a legitimate expectation of privacy existed in such cases, a normative inquiry would be proper.

*Smith v. Maryland*, 442 U.S. 735, 741 n.5 (1979) (internal quotation marks omitted). We fail to see why a subjective expectation of privacy would have any additional relevance in cases like the present one. In addition, as noted in *Hempele*, "the two-prong analysis entails an arbitrary distinction between facts that manifest a subjective privacy expectation and those that indicate the reasonableness of the privacy expectation." 576 A.2d at 801. The *Hempele* court gave the example of a warrantless search of a clear plastic purse. *Id.* at 802. "Thus the objective fact of the transparency of the purse could be evidence either of a failure to manifest a subjective privacy expectation or of the unreasonableness of that subjective privacy expectation. The decision to apply that fact to one prong rather than the other would be arbitrary." *Id.*

**Analysis**

{11}     Before analyzing the issue in terms of the location where the garbage was placed, we reiterate *Granville*'s acknowledgment that "[t]he contents of a person's garbage are evidence of his [or her] most private traits and intimate affairs." 2006-NMCA-098, ¶ 25. Garbage can reveal recreational pursuits, "sexual and personal hygiene practices; information about one's health, finances, . . . political preferences" and details about relationships and beliefs. *Id.* This Court said in *Granville*, "We believe that most people would greatly object if faced with the reality of another person's snooping in their private affairs by sorting through their garbage." *Id.* ¶ 26.

{12}     Given the backdrop of this "presumption that an expectation of privacy is reasonable when garbage is in a container that conceals the contents from plain view," we turn to the State's arguments. *Id.* ¶ 27. According to the State, despite *Granville*'s determination that a person has a reasonable expectation of privacy in garbage placed outside a family home, it is unreasonable to conclude that a person has a similar expectation of privacy in garbage placed in a motel dumpster. This is because (1) the person placing garbage in a motel dumpster has less control over the garbage and (2) the public has greater access to garbage in a dumpster.

{13}     With respect to the first point, the State argues that a person inevitably loses control over his or her garbage. Thus, a person cannot reasonably expect his or her garbage to be treated confidentially and with respect by those who have access to the garbage in the dumpster or those with access after the garbage is removed for disposal. The State further argues that while a homeowner directly transmits his or her garbage to the collector, Defendant threw his garbage in a dumpster and left it to the motel owners to control its disposition.

5

**{14}**     We first observe that we need not concern ourselves with the privacy expectations applicable to garbage that is in the process of being hauled away or garbage in the garbage dump because those are not the facts before us.  In the present case, we are concerned only with a person's privacy interest in garbage disposed of in a motel dumpster before the dumpster is hauled away or emptied, or its contents are commingled with garbage in other containers or at the dump.

**{15}**     It appears that the State's argument related to control is, in effect, the same as its second argument—that the public has greater access to garbage in a dumpster.  The State notes that a person placing garbage in a garbage can outside the home "has a greater ability to control access to it—for instance, by stopping someone about to open the bin."  In contrast, the State observes, Defendant "had no right to exclude others from pulling his garbage bags out of the dumpster and looking into them."

**{16}**     Importantly, the Court in *Granville* explained that a reasonable expectation of privacy is not necessarily rendered unreasonable where garbage in a closed, opaque bag is left in an area accessible to the public.  *See id.* ¶¶ 28-31.  The Court reasoned that the mere possibility of access by the public does not negate a person's reasonable expectation of privacy and the expectation that the garbage will be free from governmental intrusion before it is removed by a garbage truck and disposed of.  *See id.* ¶¶ 30-31.  "Article II, Section 10, protects citizens from governmental intrusions, not intrusions from members of the general public, the garbage collector, or nearby wildlife." *Id.* ¶ 29.  In addition, as the *Hempele* court aptly noted, "[a]lthough garbage bags are placed in areas accessible to the public, the *contents* are not exposed to the public."  576 A.2d at 807.

**{17}**     While a motel dumpster may be more easily accessed by the public than a garbage can outside a single-family residence, we fail to see why this should result in a reduced expectation of privacy in the contents of garbage bags thrown into the dumpster.  "There is a difference between a homeless person scavenging for food and clothes, and an officer of the [s]tate scrutinizing the contents of a garbage bag for incriminating materials." *Id.* at 805.

**{18}**     The State further contends that the Court in *Granville* took pains to emphasize that "it was because the garbage [in *Granville*] was from a home, found in garbage cans outside the home, that greater privacy protection was warranted."  In support, the State highlights the following language in *Granville*:

> With our holding today, we acknowledge the specific language "homes and effects" [in] Article II, Section 10.  As we detailed above, the contents of an individual's refuse are evidence of intimate and private affairs that are conducted within the home, the most protected of areas. It is reasonable for an individual to have an expectation of privacy in these effects of the home.

2006-NMCA-098, ¶ 33 (citation omitted).

6

**{19}** We think the State reads *Granville* too narrowly. While a motel room is not the same as a person's "home," the United States Supreme Court has recognized that for Fourth Amendment purposes, a motel guest has privacy interests similar to those he or she has when in the home. *Stoner v. California*, 376 U.S. 483, 490 (1964) (explaining that "[n]o less than a tenant of a house, or the occupant of a room in a boarding house, a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures" (citation omitted)). Our state appellate courts recognized the same principle in analyzing searches under the Fourth Amendment. *See State v. Zamora*, 2005-NMCA-039, ¶¶ 5, 14, 137 N.M. 301, 110 P.3d 517 (holding that "[the d]efendant's subjective expectation of privacy in the motel room is one that society is prepared to recognize as reasonable" where the defendant was an invited overnight guest in a motel room occupied by his aunt and his cousin). Like the defendant in *Zamora*, Defendant in the present case was sharing Kidd's motel room according to the district court's unchallenged finding. Thus, under the more expansive protections afforded by our State Constitution, we conclude that Defendant had the same expectation of privacy in the "effects" of his motel room as he would have in the effects of his home.

**{20}** To further support its argument that Defendant had a diminished expectation of privacy, the State relies on several out-of-state cases, which declined to recognize an expectation of privacy in garbage. Some of the cases turn on the fact that a third party turned over the garbage to the police. *See State v. Howard*, 157 P.3d 1189, 1190 (Or. 2007) (involving a sanitation company that turned over the defendant's garbage to an officer after the garbage was collected from the defendant's home); *State v. Purvis*, 438 P.2d 1002, 1002-04 (Or. 1968) (en banc) (involving a hotel maid who, acting at the behest of the police, found a marijuana butt on the floor of a room and gave it to police). The operative facts in the current case are materially distinct. Here, Defendant placed his sealed garbage from the motel room directly in the motel garbage receptacle, which the agent himself removed and searched. There was no third party intrusion and, as a result, these out-of-state cases are not persuasive authority.

**{21}** The remaining cases the State relies on either apply the analysis under the Federal Constitution, which we rejected in *Granville*, or they rely on a materially distinct state constitution. *See, e.g.*, *United States v. Hall*, 47 F.3d 1091, 1094-96 (11th Cir. 1995) (denying a Fourth Amendment privacy interest in a business's garbage placed in a commercial dumpster under federal jurisprudence). The State relies heavily on case law from the State of Washington, because it has departed from federal case law in the context of residential garbage searches, but it has refused to protect garbage discarded in an apartment complex or next to an abandoned house. *See State v. Boland*, 800 P.2d 1112, 1116-17 (Wash. 1990) (holding that a search of residential garbage left curbside was an unreasonable governmental intrusion); *State v. Hepton*, 54 P.3d 233, 236-38 (Wash. Ct. App. 2002) (holding that the defendant had no privacy interest in the next-door-neighbor's garbage can); *State v. Rodriguez*, 828 P.2d 636, 642 (Wash. Ct. App. 1992) (holding that the garbage bag full of stolen property the defendant, in an attempt to hide it, discarded in a community dumpster at his mother's apartment complex where he was staying was not part

7

of his constitutionally protected private affairs). In *Boland*, however, the Washington court expressly emphasized that there is an "important doctrinal difference" between Washington case law and federal case law or the law of other states that have relied on their state constitutions. 800 P.2d at 1116. The Washington court specifically distinguished the reasoning upon which *Granville* relied, stating that the analysis under the Washington Constitution was not whether an expectation of privacy was reasonable, but rather "whether the 'private affairs' of an individual have been unreasonably violated." *Boland*, 800 P.2d at 1116 (distinguishing the analysis of the New Jersey court under its state constitution in *Hempele* that rejected federal case law on residential garbage searches). We do not find Washington case law helpful in construing our own constitution in this case.

**{22}** The State's focus on control over garbage and public access to garbage amounts to little more than the Fourth Amendment public accessibility theory in *Greenwood* that we rejected in *Granville*. Importantly, we determined that the defendant in *Granville* had a reasonable expectation of privacy in the garbage he disposed of in a public alley located behind his brother's home. 2006-NMCA-098, ¶¶ 3, 33-35. With these facts, the *Granville* opinion went to great lengths to explain that "[w]hat a person seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Id.* ¶ 28 (internal quotation marks and citation omitted). Nothing in the opinion indicates an intention to require people to accept greater governmental intrusions and diminished privacy expectations where the garbage receptacle is used by multiple residents or where a third party arranges the disposal of guests' garbage.

**{23}** In fact, *Granville* often relied on the privacy notions expressed in *State v. Morris*, 680 A.2d 90 (Vt. 1996), in which the court protected, under its state constitution, a tenant's expectation of privacy in garbage he discarded by placing it near the curb of his apartment complex in opaque garbage bags. *See Granville*, 2006-NMCA-098, ¶¶ 22, 30, 32-33. Facing similar arguments that the State raises here, the Vermont Supreme Court in *Morris* held that third-party intrusions or consent did not negate the reasonable expectation of privacy in one's garbage while residing in a hotel room or multiple-unit dwelling. *See Morris*, 680 A.2d at 99-100 (noting that "[a]part from *Greenwood*, the Supreme Court has never held that an intent to transfer an object or conversation to a third party renders any expectations of privacy unreasonable simply because the third party could then transfer the object to police"). We believe the Vermont Supreme Court's reasoning in *Morris* most comports with this Court's interpretation of the New Mexico Constitution in *Granville*. We agree with the opinion in *Morris* that while communal garbage receptacles may pose a greater risk of "unwanted meddlers, this is hardly a sound reason for concluding, in effect, that the police have carte blanche to subject [tenants of a multi-unit dwelling] to detailed scrutiny [of the private affairs that appear in their garbage]." 680 A.2d at 118 n.3. We also find it significant that the State's arguments against a privacy interest in garbage placed in a motel dumpster apply equally to garbage placed by a resident of an apartment complex in a communal dumpster. The State's contentions suggest the troubling notion that a person unable to afford a single-family house will suffer lesser constitutional privacy protections. *See id.*

8

{24}    By placing his garbage in sealed, opaque bags and depositing it directly in the dumpster provided for motel guests, Defendant's actions demonstrated a reasonable expectation that those bags would remain free from warrantless law enforcement inspection at the place where the garbage is placed for customary garbage collection. *See Granville*, 2006-NMCA-098, ¶ 31 ("It was reasonable for the defendants to expect that by their placing the garbage in a particular place and manner for the purpose of disposal, only garbage collection companies would remove the bags and would do so for the express purpose of disposal."). Without the presence of any other exception to the warrant requirement, the warrantless search of Defendant's garbage was unreasonable under the heightened protections of Article II, Section 10 of the New Mexico Constitution.

{25}    In light of our holding, we need not address the State's argument that Defendant did not have standing to challenge the search of the garbage bags in question. The State's argument on standing is virtually identical to its argument on the issue of whether a person has a reasonable expectation of privacy in garbage placed in a motel dumpster.

**CONCLUSION**

{26}    For these reasons, we affirm the district court's suppression of the evidence.

{27}    **IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**I CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

**JAMES J. WECHSLER, Judge (dissenting).**

**WECHSLER, Judge (dissenting).**

{28}    I do not believe that, as an extension of *Granville*, "society is prepared to recognize as reasonable" the privacy expectation in this case. *Granville*, 2006-NMCA-098, ¶ 11.

{29}    In *Granville*, this Court addressed the issue of "whether Article II, Section 10, of the New Mexico Constitution prohibits the warrantless search of an individual's garbage bags placed in trash containers located in an alley behind a residence" where the defendant resided. *Granville*, 2006-NMCA-098, ¶¶ 1, 3. We concluded that "an individual in New Mexico has a reasonable expectation of privacy in his garbage placed for collection in an

opaque container." *Id.* ¶ 33. The issue before us in this case is whether this constitutional protection extends beyond the facts of *Granville* to garbage placed in a motel dumpster.

**{30}** I do not believe that there is a reasonable expectation of privacy in these circumstances. I do not reach this view because such garbage does not reveal the individual's private matters or that an individual can have a reasonable expectation of privacy in garbage placed for collection in an opaque container; these were predicate propositions of *Granville*. Nor do I reach this conclusion because a motel guest does not have a privacy interest in a motel room; a motel guest has the same rights concerning the search of the room that apply to the search of a residence. *See Zamora*, 2005-NMCA-039, ¶ 14. Rather, I arrive at my conclusion because I believe that, when viewed objectively, a motel guest does not have a reasonable expectation of privacy in garbage placed outside of the motel room in a dumpster.

**{31}** First, in my opinion, a dumpster in a parking lot cannot reasonably be viewed as part of the motel room. I consider the general and reasonable expectation for garbage disposal in a motel room to be that the guest would deposit the garbage in a trash container provided by the motel in the room. A motel room is different from a residence in this regard. At a residence, as indicated by *Granville*, the resident has the responsibility to place the garbage at the collection point outside of the residence. *Granville*, 2006-NMCA-098, ¶ 32. Thus, I do not consider cases such as *Zamora* that draw a parallel between a motel room and a residence for search and seizure purposes to control this case.

**{32}** Second, I view the issue, at least in part, as one of control. An individual who disposes of garbage outside a residence, as in *Granville*, has nearly full control of the garbage until it is collected. That is, the individual has not ceded control, and if the individual chooses to retrieve items placed for collection, there is not difficulty in doing so. On the other hand, an individual placing garbage in a dumpster at a motel does not have the same level of control; it is significantly more difficult to retrieve garbage because it is intermingled with garbage that did not originate from the individual. Moreover, the motel, which has no relation to the individual for this purpose, has overall control of the dumpster and the collection of garbage within it. *See Granville*, 2006-NMCA-098, ¶ 31 (adopting the reasoning of *State v. Galloway*, 109 P.3d 383 (Or. Ct. App. 2005), that when an individual makes arrangements for collection of garbage, the individual has a reasonable expectation the collection will take place as arranged). An individual disposing of garbage in this manner has ceded control of it and has placed the garbage beyond the individual's zone of privacy.

**{33}** I thus do not believe that a motel guest has a reasonable expectation of privacy in garbage disposed of in the motel's dumpster outside of the guest's room and respectfully dissent from the opinion of the Court.

_____
**JAMES J. WECHSLER, Judge**

10

**Topic Index for *State v. Crane*, Docket No. 29,470**

**AE**                                **APPEAL AND ERROR**
AE-SR                         Standard of Review

**CT**                                  **CONSTITUTIONAL LAW**
CT-FA                         Fourth Amendment
CT-PR                         Privacy
CT-SU                         Suppression of Evidence

**CL**                                  **CRIMINAL LAW**
CL-CL                         Controlled Substances

**CA**                                  **CRIMINAL PROCEDURE**
CA-MR                       Motion to Suppress
CA-SZ                         Search and Seizure
CA-WS                      Warrantless Search