# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number: 2014-NMSC-026**

**Filing Date: June 30, 2014**

**Docket No. 33,014**

**STATE OF NEW MEXICO,**

      **Plaintiff-Petitioner,**

**v.**

**KEVYN CRANE,**

      **Defendant-Respondent.**

**ORIGINAL PROCEEDING ON CERTIORARI**
**Stephen K. Quinn, District Judge**

Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
James W. Grayson, Assistant Attorney General
Santa Fe, NM

for Petitioner

Law Works, L.L.C.
John A. McCall
Albuquerque, NM

for Respondent

## OPINION

**VIGIL, Chief Justice.**

{1}     With this opinion we address whether, pursuant to Article II, Section 10 of the New Mexico Constitution, Kevyn Crane (Defendant) had a reasonable expectation of privacy in garbage left out for collection in a motel dumpster. The district court found that Defendant did have such an expectation, and it entered an order suppressing evidence obtained in the dumpster, as well as evidence later obtained by a warrant, which it found was the proverbial fruit of the poisonous tree. The Court of Appeals upheld the district court's ruling, relying

1

on its holding in *State v. Granville*, 2006-NMCA-098, 140 N.M. 345, 142 P.3d 933, that New Mexicans do have a reasonable expectation of privacy in garbage left out for collection, which requires that the police obtain a warrant prior to searching. We affirm the Court of Appeals' ultimate holding, but on slightly different grounds.

## I. BACKGROUND

{2} Defendant was charged with trafficking controlled substances in violation of NMSA 1978, Section 30-31-20(A)(1) (2006) and possession of drug paraphernalia in violation of NMSA 1978, Section 30-31-25.1(A) (2001). These charges were based on evidence obtained by the police, who found evidence of methamphetamine manufacturing in the dumpster of the Choice Inn in Clovis, New Mexico, where Defendant and Christopher Kidd ("Kidd") occupied Room 316. Prior to trial, Defendant moved for the suppression of evidence found in the dumpster, as well as evidence obtained from Room 316, which was acquired by a search warrant that was based in part on the evidence recovered from the dumpster. He argued that the police's warrantless search of the garbage and subsequent immediate searches violated his constitutional right to be free of unreasonable searches and seizures. The district court granted the motion to suppress and entered findings of fact and conclusions of law. The district court based its reasoning on the following facts.

{3} On July 14, 2008, the Clovis Police Department received an anonymous call from a guest of the Choice Inn who reported a strong chemical odor coming from Room 316. In response, the department dispatched members of the Region V Drug Task Force to investigate. Agent Waylon Rains was the first to arrive, and upon arrival, he immediately investigated the area. He was unable to identify any odor without alerting Room 316's occupants to his presence, but he identified a car he recognized as Defendant's parked outside of the room. Agent Rains then spoke with motel staff, alerting them to the department's suspicions. He learned from the motel registry that Room 316 was rented to Kidd.

{4} While conducting this preliminary survey of the situation, Agent Rains observed a male, whom he later identified as Kidd, leave Room 316 and discard an unsealed box in the motel's dumpster. Once Kidd returned to the room from the dumpster, Agent Rains retrieved the box from the dumpster and hid behind an adjacent cinder block wall to inspect its contents. The unsealed box contained miscellaneous trash and an empty box that previously contained latex gloves. While Agent Rains was behind the cinder block wall, he heard at least two more items being deposited into the dumpster. He was not sure who deposited the items; however, he suspected that they were being thrown out by the same individual from Room 316, as he did not notice anyone else on the property.

{5} Agent Rains then retrieved two sealed garbage bags from the dumpster. He testified that it appeared to him that the bags were black, and that there were also smaller clear bags, the latter of which may have been inside the former. In either case, he did not know what the bags' contents were prior to opening them. Once he did open the bags, Agent Rains noted

2

a strong chemical smell. Notably he could not recall whether he noticed the smell before opening the bags. Agent Rains discovered evidence of methamphetamine production inside the bags, including empty packages of pseudoephedrine pills, an empty can of acetone, empty cans of gas line antifreeze, and several matchbook packages. By that point, Agent Steven Wright had arrived on the scene, and after reviewing the contents of the trash bags with Agent Rains, he left to obtain a warrant to search Room 316.

**{6}** Shortly after Agent Wright departed, Agent Rains observed as Defendant and Kidd exited Room 316 with a large suitcase and put the suitcase in a vehicle that had arrived to meet them. Observing that it appeared that the parties were leaving, Agent Rains made contact and detained them. He asked for identification from all of the parties, and had to escort Kidd back into Room 316 to retrieve his identification. Upon entering the room, Agent Rains immediately noted the same chemical smell as was in the trash bags, but saw no other evidence of the manufacturing of methamphetamine.

**{7}** Agent Wright later returned with a search warrant for Room 316, the vehicle earlier identified as Defendant's, and the vehicle that arrived to meet them, in which the suitcase was placed. The agents found additional manufacturing items and paraphernalia including digital scales, glass pipes, small plastic bags, muriatic acid, Coleman fuel, acetone, and a jar of bi-layered liquid. They also found personal letters to Defendant stored in a box in the motel room closet. On this evidence, Defendant was charged with trafficking methamphetamine and possession of drug paraphernalia.

**{8}** Defendant moved to suppress this evidence prior to trial. He argued that under *Granville*, the agents' warrantless search of the garbage violated his Article II, Section 10 right to be free from unreasonable searches and seizures. The district court granted the motion, concluding that

> [Defendant] had a reasonable expectation of privacy in [] Kidd's hotel room, and therefore the police could not search the refuse that Kidd threw into the dumpster which was not visible, and furthermore, that a warrant for Room 316 based in large part on what was observed in the trash bags [was] invalid and the items found because of the search warrant should be suppressed.

The State appealed the district court's ruling and the Court of Appeals affirmed.

**{9}** The Court of Appeals limited its review, and the parties agreed, "to the reasonableness of a motel guest's expectation of privacy in his or her garbage under the New Mexico Constitution." *State v. Crane*, 2011-NMCA-061, ¶ 6, 149 N.M. 674, 254 P.3d 117. The Court of Appeals also acknowledged that *Granville* departed from the federal analysis with respect to garbage searches. *Crane*, 2011-NMCA-061, ¶ 21. Specifically, it rejected the State's arguments that greater public access to motel dumpsters and lesser control over one's garbage in dumpsters meant that Defendant had no reasonable expectation of privacy. *Id.* ¶ 22. The Court of Appeals characterized the State's reasoning as "little more than the Fourth

Amendment public accessibility theory . . . that we rejected in *Granville*." *Crane*, 2011-NMCA-061, ¶ 22.

**{10}** The Court of Appeals ultimately reasoned that "[b]y placing his garbage in sealed, opaque bags and depositing it directly in the dumpster provided for motel guests, Defendant's actions demonstrated a reasonable expectation that those bags would remain free from warrantless law enforcement inspection at the place where the garbage is placed for customary garbage collection." *Id*. ¶ 24. Further, "[w]ithout the presence of any other exception to the warrant requirement, the warrantless search of Defendant's garbage was unreasonable under the heightened protections of Article II, Section 10 of the New Mexico Constitution." *Id*. The State now asks us to overrule the Court of Appeals, but we decline to do so.

## II.      DISCUSSION

### A.      Standard of Review

**{11}** At issue in this case is whether Article II, Section 10 of the New Mexico Constitution prohibits a warrantless search of garbage left for collection in a motel dumpster. "We review [questions] of statutory and constitutional interpretation de novo." *State v. Ordunez*, 2012-NMSC-024, ¶ 6, 283 P.3d 282 (internal quotation marks and citation omitted).

### B.      Article II, Section 10 Provides Greater Protection of Privacy in Garbage Left in a Dumpster than the Fourth Amendment

**{12}** Article II, Section 10 of the New Mexico Constitution states that "[t]he people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures." Similarly, the Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." The question before this Court is whether Defendant's expectation that the contents of a garbage bag that was put in a motel dumpster would remain private was reasonable, thereby invoking the protections of Article II, Section 10 to require that police get a warrant before searching the garbage bag. In answering this question, we must first determine whether Article II, Section 10 provides greater protection against warrantless searches of garbage by police than its federal counterpart. To do so, we adhere to the interstitial approach to constitutional interpretation set forth in *State v. Gomez*, 1997-NMSC-006, ¶¶ 19, 22-23, 122 N.M. 777, 932 P.2d 1. The framework for the *Gomez* interstitial analysis covers three primary questions: (1) whether the right asserted by Defendant is protected by the Fourth Amendment to the United States Constitution; (2) whether Defendant preserved the state constitutional claim in the lower court; and (3) whether one of three established reasons exists to justify diverging from federal precedent. *Gomez*, 1997-NMSC-006, ¶¶ 19, 22. We proceed to address each of these questions.

4

### 1. The right to privacy in garbage left for collection is not protected by the Fourth Amendment

**{13}** To answer the first question of our interstitial analysis, we acknowledge that "[i]t is well established that the Fourth Amendment does not protect an individual from a warrantless search of garbage set out for collection." *Granville*, 2006-NMCA-098, ¶ 11 (citing *California v. Greenwood*, 486 U.S. 35, 37 (1988) and *United States v. Long*, 176 F.3d 1304, 1308 (10th Cir. 1999)). In *Greenwood*, the United States Supreme Court held that the police do not violate the Fourth Amendment by searching garbage without a warrant because society is not prepared to recognize a privacy expectation in garbage as reasonable. 486 U.S. at 40-41. Thus, the answer to the first interstitial inquiry is that federal jurisprudence does not establish protection against a warrantless search of garbage left out for collection in a sealed opaque container by police under the Fourth Amendment.

### 2. Defendant adequately preserved his state constitutional claim

**{14}** The second question in our interstitial analysis is whether Defendant adequately preserved his claim under our state constitution. When "precedent construes the provision to provide more protection than its federal counterpart, the claim may be preserved by (1) asserting the constitutional principle that provides the protection sought under the New Mexico Constitution, and (2) showing the factual basis needed for the trial court to rule on the issue." *Gomez*, 1997-NMSC-006, ¶ 22. We note, as did the Court of Appeals below, that Defendant's motion to suppress was based on his claim that our state constitution protects his expectation of privacy in the garbage that was placed in the motel dumpster. *Crane*, 2011-NMCA-061, ¶ 6. Because Defendant's motion to suppress was based solely on the state constitution, the Court of Appeals limited its review of his claim on appeal to Article II, Section 10 of the New Mexico Constitution. *Id*. Defendant based his motion to suppress specifically on *Granville*, which interpreted Article II, Section 10 as providing more protection of privacy in garbage left out for collection than the Fourth Amendment. 2006-NMCA-098, ¶ 24. Likewise, the district court relied on *Granville* in granting Defendant's motion to suppress. Therefore, Defendant adequately preserved his constitutional claim under Article II, Section 10.

### 3. Reasons to depart from federal jurisprudence

**{15}** The third *Gomez* prong requires us to determine whether at least one of three grounds exists which would justify departing from federal jurisprudence, namely: (1) the federal analysis is flawed or undeveloped; (2) structural differences exist between federal and state government; or (3) distinctive state characteristics exist that would support the departure. 1997-NMSC-006, ¶ 19. "Because some of these factors will be present in virtually every case . . . [this Court] weigh[s] the relevant considerations in the case at hand to determine whether they favor elaboration of state constitutional doctrine and to identify the factors deserving the greatest attention in that elaboration." *Developments in the Law—The Interpretation of State Constitutional Rights*, 95 Harv. L. Rev. 1324, 1359 (1982)

5

(hereinafter *Developments*). For the reasons that follow, we consider certain distinct state characteristics to be adequate grounds upon which to depart from federal jurisprudence and elaborate on our state search and seizure jurisprudence with respect to garbage searches.

**{16}** The foremost distinct state characteristic upon which this Court has elaborated New Mexico's search and seizure jurisprudence under Article II, Section 10 is "a strong preference for warrants." *Gomez*, 1997-NMSC-006, ¶ 36 (citing *Campos v. State*, 1994-NMSC-012, 117 N.M. 155, 870 P.2d 117 (*Campos II*); *State v. Gutierrez*, 1993-NMSC-062, 116 N.M. 431, 863 P.2d 1052; *State v. Cordova*, 1989-NMSC-083, 109 N.M. 211, 784 P.2d 30)). The underlying principle upon which the preference for warrants is predicated is that "[t]he judicial warrant has a significant role to play in that it provides the detached scrutiny of a neutral magistrate, which is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer engaged in the often competitive enterprise of ferreting out crime." *Gomez*, 1997-NMSC-006, ¶ 36 (internal quotation marks and citations omitted). Accordingly, New Mexico courts have long held that Article II, Section 10 provides greater protection of individual privacy than the Fourth Amendment. *See Granville*, 2006-NMCA-098, ¶ 19 ("When interpreting Article II, Section 10, the New Mexico Supreme Court has emphasized its strong belief in the protection of individual privacy."); *see also State v. Attaway*, 1994-NMSC-011, ¶ 24, 117 N.M. 141, 870 P.2d 103 ("Article II, Section 10 embodies the disparate values of privacy, sanctity of the home, occupant safety, and police expedience and safety."), *holding modified on other grounds by State v. Lopez*, 2005-NMSC-018, 138 N.M. 9, 116 P.3d 80. We once again elaborate upon our search and seizure jurisprudence based on our strong preference for warrants, depart from federal jurisprudence, and hold that Article II, Section 10 provides greater protection than the Fourth Amendment of the right to privacy in garbage which is sealed from plain view and placed out for collection.

**{17}** In reaching this holding, "[w]e reiterate that in exercising our constitutional duty to interpret the organic laws of this state, we independently analyze the New Mexico constitutional proscription against unreasonable searches and seizures." *Gutierrez*, 1993-NMSC-062, ¶ 16. "The very backbone of our role in a tripartite system of government is to give vitality to the organic laws of this state by construing constitutional guarantees in the context of the exigencies and the needs of everyday life." *Id.* ¶ 55. Further, we note "that the role of federal constitutional rights is to ensure a certain minimum level of protection, a role that is not undermined when states decide that greater levels of protection are required." *Developments*, *supra*, 95 Harv. L. Rev. at 1359-1360. "When a state court finds the federal doctrine inadequate, it has a legitimate and compelling reason to elaborate state doctrine in that area independently." *Developments*, *supra*, at 1360. The United States Supreme Court acknowledged these principles: "Individual States may surely construe their own constitutions as imposing more stringent constraints on police conduct than does the Federal Constitution." *Greenwood*, 486 U.S. at 43.

**C.      Reasonable Expectation of Privacy Extends to Garbage Discarded Outside a Motel Room in a Dumpster Near an Alley**

**{18}** Having concluded that the New Mexico Constitution affords a greater protection of privacy in garbage left for collection than its federal counterpart, we proceed to apply the two-prong test set out in the seminal case of *Katz v. United States*, 389 U.S. 347 (1967) to the facts in this case to conclude that Article II, Section 10 requires police to obtain a warrant prior to searching garbage. *See Akins v. United Steel Workers of Am.*, 2010-NMSC-031, ¶ 15, 148 N.M. 442, 237 P.3d 744 ("In developing a body of state common law, we may look to federal law for guidance . . . ."). The applicable two-prong test in *Katz* is summarized in Justice Harlan's concurring opinion. 389 U.S. at 361 (Harlan, J., concurring). Justice Harlan reiterated that "'the Fourth Amendment protects people, not places,'" and summed up the majority's articulation of what protection it affords as setting forth a twofold requirement. *Id.* (Harlan, J., concurring). First, "a person [must] have exhibited an actual expectation of privacy," and second, "the expectation [must] be one that society is prepared to recognize as reasonable." *Id.* (Harlan, J., concurring). Thus, the *Katz* two-prong test has both subjective and objective components.

**{19}** The Court of Appeals declined to apply the first (subjective) prong of the *Katz* test in this case. Instead, it focused solely on the second prong—whether society would recognize as reasonable an expectation of privacy in garbage. *Crane*, 2011-NMCA-061, ¶¶ 9-10. We disagree with the Court of Appeals' rationale on this point and hold that both prongs of the *Katz* test apply in this case. While the ultimate inquiry may be the reasonableness of the individual's expectation of privacy, that objective measure cannot take place in a vacuum. Without considering whether the facts in a particular case support an individual's actual expectation of privacy, there would be nothing to measure society's recognition of reasonableness against. "Reasonableness is given life by the factual matrix in which events take place." *Attaway*, 1994-NMSC-011, ¶ 24. Courts should consider whether a defendant has exhibited an actual or subjective expectation of privacy and whether such an expectation is one that society is prepared to recognize as reasonable. *Katz*, 389 U.S. at 361 (Harlan, J., concurring).

**{20}** Applying the first subjective *Katz* prong to the facts in this case, we note that the garbage was placed in an opaque bag and was sealed from plain view. The opaque garbage bags were placed directly in the dumpster, rather than being left in the motel room for disposal by the housekeeping staff. Such conduct reflected an actual expectation that the contents of the garbage bags would remain private from inspection by others. Accordingly, we apply the second *Katz* prong to determine whether Defendant's expectation of privacy is reasonable. To answer this question, we rely on the notion that

> The contents of a person's garbage are evidence of his most private traits and intimate affairs. A search of one's garbage can reveal eating, reading, and recreational habits; sexual and personal hygiene practices; information about one's health, finances, and professional status; details regarding political preferences and romantic and other personal relationships; and a person's own private thoughts, activities, beliefs, and associations. [A]lmost every human activity ultimately manifests itself in waste products[,] and . . . any

7

individual may understandably wish to maintain the confidentiality of his refuse.

*Granville*, 2006-NMCA-098, ¶ 25 (alterations in original) (internal quotation marks and citations omitted). The contents of one's trash reveal the most personal details and nuances of one's life. This precept shapes our discourse of whether garbage that is disposed of in a receptacle that is shared with others renders it acceptable for inspection by police without a warrant.

**{21}** When considering this very precept in holding that the Fourth Amendment does not require a warrant prior to searching garbage left out for collection, the majority's rationale in *Greenwood* was essentially that "[i]t is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public." 486 U.S. at 40 (footnotes omitted). Further, "respondents placed their refuse at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through respondents' trash or permitted others, such as the police, to do so." *Id*." Therefore, because the defendants "deposited their garbage in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it," the Supreme Court held that "respondents could have had no reasonable expectation of privacy in the inculpatory items that they discarded." *Id*. at 40-41 (internal quotation marks and citation omitted). We disagree with this underlying notion and agree with Justice Brennan's dissent in *Greenwood* that the majority's analysis is flawed.

**{22}** The *Greenwood* dissent artfully articulated the flaw in the majority's holding that the defendant's expectation of privacy was objectively unreasonable by first noting that

> Scrutiny of another's trash is contrary to commonly accepted notions of civilized behavior. I suspect, therefore, that members of our society will be shocked to learn that the Court, the ultimate guarantor of liberty, deems unreasonable our expectation that the aspects of our private lives that are concealed safely in a trash bag will not become public.

*Id*. at 45-46 (Brennan, J., dissenting). The dissent reasoned, and we agree, that when one seals garbage in an opaque container, one exhibits a reasonable expectation that the contents of the sealed, opaque container will remain private until the garbage is inextricably commingled with other refuse. *Id*. at 55-56 (Brennan, J., dissenting).

**{23}** The *Greenwood* dissent also pointed out that if the defendant in that case had been transporting the garbage, rather than leaving it out for collection, there is no doubt that the bag's contents would have been constitutionally protected from an unwarranted search, absent some exception to the warrant requirement. *Id*. at 48 (Brennan, J., dissenting). Simply because the garbage was left out for collection, rather than transported, the dissent reasoned that the constitution should offer no less protection. *Id*. (Brennan, J., dissenting). We agree.

8

Constitutional protections are not to be accorded such arbitrariness so as to be granted to those persons who have the wherewithal to privately control the disposal of their waste by, for instance, having their garbage personally taken to the landfill.

**{24}** Likewise, as the *Greenwood* dissent pointed out, we conclude that society would consider the expectation of privacy to be reasonable, as evidenced by ordinances that prohibit rummaging through another individual's garbage. *Id*. at 52 (Brennan, J., dissenting) ("Beyond a generalized expectation of privacy, many municipalities, whether for reasons of privacy, sanitation, or both, reinforce confidence in the integrity of sealed trash containers by prohibit[ing] anyone, except authorized employees of the Town . . . to rummage into, pick up, collect, move or otherwise interfere with articles or materials placed on . . . any public street for collection." (alterations in original) (internal quotation marks and citation omitted)); *accord* Clovis, N.M., Code of Ordinances ch. 8.04.100 (1985) ("It is unlawful for any person, not authorized to do so, to remove the lid from any refuse container or to collect, molest or scatter the refuse stored in such container.").

**{25}** The *Greenwood* dissent also cited to local ordinances that mandate how garbage is to be disposed of, reasoning that the constitution must protect an expectation of privacy so that the government cannot force an individual to dispose of something she considers private, only to be able to then search through it without a warrant. 486 U.S. at 55-56 (Brennan, J., dissenting). We agree once again. "[A]llowing the State to conduct a warrantless search of refuse set out for collection when an individual is required by law to dispose of his refuse in a specific place, time, and manner is inconsistent with the privacy protections provided by Article II, Section 10." *Granville*, 2006-NMCA-098, ¶ 32; *see also State v. Boland*, 800 P.2d 1112, 1117 (Wash. 1990) (en banc) (holding that while the necessary regulation of garbage must compel a person to reasonably expect that a licensed trash collector will remove his garbage, "this expectation does not also infer an expectation of governmental intrusion").

**{26}** The manner in which household trash is disposed of and collected in New Mexico is regulated by municipalities and counties. *See generally* NMSA 1978, § 74-9-7 (1991). In some communities, garbage must be placed in an individual bin and moved to the curb for collection. *See* Albuquerque, N.M., Code of Ordinances ch. 9, art. X, Section 1-6(A), (E)(3); Bernalillo County, N.M. Code of Ordinances ch. 70, art. II, § 70-36(a), (f)(3). The City of Clovis, on the other hand, requires its residents to share dumpsters which are provided by the city and placed near the alley for easy access by garbage trucks.[1] We consider

---

[1]"A metal trash collection container must be located so that it is conveniently accessible and is used by six residential units. The location of the trash container must be readily accessible by trash collection trucks." Clovis, N.M., Code of Ordinances, ch. 18.70.900(H) (1999). "Every person within the city shall use and maintain the garbage and rubbish receptacles provided by the city to be kept at the rear of property abutting the alley, and, in case the property does not so abut on or have access to an alley, the garbage and

9

compliance with local ordinances governing the disposal of household garbage to support the reasonableness of an expectation that it will remain private from unwarranted inspection by the government.

**{27}**    The State asks us to distinguish between a recognized expectation of privacy under Article II, Section 10 in garbage which is placed in an individual bin from that which is placed in a receptacle that is shared with others. This would require that we discern the level of constitutional protection to privacy in garbage upon whether one disposed of their garbage in an individual trash bin or in a communal receptacle, which in this particular case is mandated by local ordinance. We refuse to render such a distinction meaningful in our constitutional analysis, and we conclude that there is no purposeful distinction in the privacy expectations held by a person who disposes of trash in an individual receptacle from that of a person who places his or her refuse in a shared trash receptacle. While a communal receptacle may be more easily accessible to animals, scavengers or strangers, we agree with the Court of Appeals that "the mere possibility of [greater] access by the public does not negate a person's reasonable expectation of privacy and the expectation that the garbage will be free from governmental intrusion before it is removed by a garbage truck and disposed of." *Crane*, 2011-NMCA-061, ¶ 16. "Article II, Section 10, protects citizens from governmental intrusions, not intrusions from members of the general public, the [garbage] collector, or nearby wildlife." *Granville*, 2006-NMCA-098, ¶ 29. Further, "[a]lthough garbage bags are placed in areas accessible to the public, the *contents* are not exposed to the public." *Crane*, 2011-NMCA-061, ¶ 16 (alteration in original) (internal quotation marks and citation omitted).

**{28}**    We also see no difference in a person's expectation of privacy in garbage that is generated by the occupant of a private residence and the occupant of a temporary dwelling such as a motel room. The protection of privacy afforded under Article II, Section 10 extends to the contents of refuse generated in a temporary dwelling as much as to that which is generated by a separate residence. *See Stoner v. State of California*, 376 U.S. 483, 490 (1964) ("No less than a tenant of a house, or the occupant of a room in a boarding house, a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures." (citation omitted)). The fact that a person lives in a single-family residence, a multi-family complex, or a temporary dwelling does not prescribe the degree of privacy one is afforded under Article II, Section 10 in the context of garbage searches. Such a criterion would afford those persons who by choice or circumstance live in a single-family residence with more protection of their privacy than those who reside in a temporary or apartment dwelling. We decline to make the level of protection of privacy granted under

rubbish receptacles shall be kept at the nearest street line designated as the garbage and rubbish collection route during the hours of collection." Clovis, N.M., Code of Ordinances ch. 8.04.070. "The city manager shall determine the type and size of all receptacles and their location. All persons not serviced by metal refuse containers shall use roll-out carts furnished by the city." Clovis, N.M., Code of Ordinances ch. 8.04.070.

Article II, Section 10 so arbitrary.

**D**.     **The State's Arguments**

**{29}**     The State makes several arguments challenging the rationale in *Granville*, and it urges this Court to overturn that case, or at the very least to reverse the Court of Appeals' extension of the right to privacy in sealed garbage left for collection in a shared dumpster. The State's overarching theory is that a police officer simply should not be required to obtain a search warrant before searching the contents of garbage left out for collection. We reject the State's arguments disputing the rationale in *Granville* and applied by the Court of Appeals in this case.

**{30}**     The State contends that because this case involves garbage discarded outside a motel room in a dumpster near an alley, the issue is the meaning and security of one's "effects," not the sanctity of one's "home." The State acknowledges that "there is a heightened expectation of privacy in one's home," *State v. Bomboy*, 2008-NMSC-029, ¶ 11, 144 N.M.151, 184 P.3d 1045, that is shared by an occupant of a motel room. *See State v. Zamora*, 2005-NMCA-039, ¶ 13, 137 N.M. 301, 110 P.3d 517 ("We have also held . . . that a motel room is the equivalent of a dwelling for [search and seizure] purposes and that as a registered guest, the occupant is entitled to the same rights he would have possessed had his private residence been searched rather than his hotel room." (internal quotation marks and citation omitted)). However, the State contends that the alley in *Granville* and the common areas of the motel in this case lay outside the curtilage of the home and cannot reasonably be expected to be treated as the home itself because these areas do not harbor the same intimate activity associated with the privacy of a home. We refuse to take such a narrow view of the language in Article II, Section 10 because "what [a person] seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Katz*, 389 U.S. at 351. One does not waive an expectation of privacy under Article II, Section 10 solely because one removes garbage from the home and sets it out for collection. What is important is whether one conceals it from plain view. *See Katz*, 389 U.S. at 361 (Harlan, J., concurring) ("[O]bjects, activities, or statements that [one] exposes to the 'plain view' of outsiders are not 'protected' because no intention to keep them to himself has been exhibited."). In this case, Kidd took steps to keep the garbage private by placing it in an opaque bag and discarding it himself in the dumpster rather than having motel housekeeping take it away.

**{31}**     The State also argues that "effects," unlike a "home," are movable, and once an effect is removed from the home, it receives constitutional protection as an "effect" and not as part of the "home." In response, we reiterate that in the context of garbage searches by police, the analysis does not depend upon the differences between an "effect" and a "home"—that one can be moved while the other cannot. It depends instead upon whether there were steps taken, as in this case, to keep the property private from inspection by others, including police.

11

**{32}** The State next urges us to apply an abandonment theory to garbage which is left for collection, arguing that it should be treated as an "abandoned effect." The State argues that because garbage, as an "effect," is left for collection, its owner has voluntarily abandoned it, along with any privacy interest thereto, which supports the propriety of a warrantless search of the garbage by police. The State relies on *State v. Everidge*, 1967-NMSC-035, ¶¶ 23, 26, 77 N.M. 505, 424 P.2d 787, which held that an abandoned package containing incriminating evidence was not protected from a warrantless search under the Fourth Amendment. *Everidge* is distinguishable, as it did not interpret the abandonment concept under Article II, Section 10. Pursuant to our interpretation of the New Mexico Constitution's heightened protections, we refuse to adopt such a narrow view that would essentially lead us to render one to have forfeited one's privacy interest by placing garbage outside the home for collection. To the contrary, we consider that the removal of garbage from one's home and the proper placement of it out for collection supports rather than negates a reasonable expectation of privacy.

**{33}** The State also argues that because New Mexicans do not view garbage any differently than other Americans, the concept of humiliation considered in *Granville* should be rejected because embarrassment has never before been considered (with the exception of the limited context of strip searches), and police should essentially have the same right to search through garbage as others. Our holding is not premised upon the humiliation or embarrassment that one may experience from an invasion of privacy. Humiliation and embarrassment are the natural human reactions to an invasion of privacy, but it is the expectation of privacy that our constitution protects. As we have stated, to rummage through one's most private affairs would be a consummate violation of their expectation of privacy.

### III. CONCLUSION

**{34}** Based on the above, we conclude that Defendant had a reasonable expectation of privacy in the garbage left in the motel dumpster, which required that the police obtain a search warrant prior to searching its contents. The district court properly suppressed the evidence obtained from the unlawful search.

**{35}  IT IS SO ORDERED.**

_____

**BARBARA J. VIGIL, Chief Justice**

**WE CONCUR:**

_____

**RICHARD C. BOSSON, Justice**

_____

**EDWARD L. CHÁVEZ, Justice**

12

**PETRA JIMENEZ MAES, Justice**, **dissenting**
**CHARLES W. DANIELS, Justice, joining in the dissent**

**MAES, Justice (dissenting).**

**{36}**    I believe that an individual has no expectation of privacy in his or her trash when disposing of it in a public place, on commercial property, such as a dumpster in a motel parking lot. I suggest that there is a difference in one's reasonable expectation of privacy on commercial property versus residential property. Thus, I respectfully dissent from the majority's holding and in addition to my own analysis, I adopt Judge Wechsler's dissenting opinion in the Court of Appeals which is attached hereto as an appendix. *See State v. Crane*, 2011-NMCA-061, ¶¶ 28-33, 149 N.M. 674, 254 P.3d 117 (J. Wechsler, dissenting).

**{37}**    This case is distinguishable from *Granville* where this Court held that a person has a reasonable expectation of privacy in one's garbage that has been placed on the curb outside their residence. *State v. Granville*, 2006-NMCA-098, ¶¶15, 22-23, 140 N.M. 345, 142 P.3d 933. Here, Defendant disposed of his garbage in a detached dumpster on commercial property. Because *Granville* focuses on one's reasonable expectation of privacy in residential garbage, that analysis does not control here.

**{38}**    The central issue in this case is not privacy interests in different residential trash receptacles but instead, privacy interests in commercial trash receptacles. Thus, I disagree with the majority's characterization of the State's argument that it is asking us to distinguish a "person's expectation of privacy in garbage that is generated by the occupant of a private residence and the occupant of a temporary dwelling such as a motel room." *See maj. op.*, ¶ 28.

**{39}**    The majority cites various city ordinances to support the notion that "one's compliance with local ordinances governing the disposal of household garbage [supports] the reasonableness of their expectation that it will remain private from unwarranted inspection by the government." *Maj. op.*, ¶ 26. I believe that the majority's focus on the city mandated *type of receptacle* to be used is in error. A person's expectation of privacy in their garbage is based on the assumption that others will not rummage through it. Therefore, we should focus our analysis on the mandated procedures for the *collection of garbage*.

**{40}**    Clovis, Albuquerque, and Bernalillo County all treat *residential* garbage collection differently than *commercial* garbage collection. Herein lies the crucial property distinction that should guide our expectation of privacy analysis in the context of commercial properties. The city of Clovis identifies this distinction by mandating that "[g]arbage and rubbish accumulated by *residences* shall be collected at least once each week. Garbage and rubbish accumulated at *all other establishments* shall be collected as often as the city manager may deem necessary for the protection of the public health." Clovis, N.M. Code of Ordinances, ch. 8.04.030 (emphasis added). The fact that residents living in communities of more than six, who have to share a communal trash receptacle due to limited space, does not

13

effect accessibility or collection of said garbage by the city. Rather, Clovis treats residential garbage differently from all other types of garbage in terms of frequency of collection and control by the city.

**{41}** A similar distinction is found in Albuquerque's code which the majority neglects to address. *See* Albuquerque, N.M. Code of Ordinances, § 9-10-1-8. Section 8 specifically distinguishes between residential and commercial properties, regardless of the type of trash container utilized, by listing "hotels, restaurants, and other such businesses and institutions" as commercial properties. Section 8(A)(2). The ordinance mandates that "[a]ll commercial containers are to be accessible between the hours of 4:00 a.m. and 8:00 p.m., or as otherwise designated by the Mayor," and that the Mayor can "require that more frequent collections be made where necessary to protect the public health." Section 8(A)(2)(a), (c). Bernalillo County makes the same distinction in its code. *See* Bernalillo County, N.M. Code of Ordinances ch. 70, art. II, § 70-39(b)(1), (2). It is clear from the ordinances that commercial properties must have trash receptacles that are openly available to the public for mandated periods of time and may be collected more or less frequently depending on public safety. On the other hand, citizens have control over how often they want to put out their trash for collection and accessibility to said trash on their residential property.

**{42}** While Clovis, Albuquerque, and Bernalillo all mandate that communal trash receptacles be utilized for larger residential complexes, each municipal code draws a distinction in the actual collection of the trash based on the nature of the property. In all three codes, residents have more control over their trash, and collection is limited; commercial trash however is not as protected and subject to heavier government control. Thus, it is logical that one would have a reasonable expectation of privacy in residential trash in which he or she exercises greater control. However, it is illogical that a person would have an objectively reasonable expectation in trash that he or she disposes of on commercial property that by law is afforded less protection. Therefore, the majority's concern that a finding of no expectation of privacy in this case would constitute discrimination of rights based on one's type of residential dwelling is misguided. *Maj. op.*, ¶ 28.

**{43}** In fact, the majority drew the correct distinction yet reached an incorrect conclusion when it stated that "[t]he fact that a person *lives* in a single family residence, a multi-family complex, or a temporary dwelling does not prescribe the degree of privacy one is afforded under Article II, Section 10 in the context of garbage searches." *Id*. (emphasis added). In this case there is nothing in the record to establish that Defendant was *living* in the motel. This case does not present a scenario that requires us to confront unequal expectations of privacy based on residential status. Instead, we are required to analyze the expectation of privacy one has in disposed garbage on commercial property. The city ordinances cited by the majority support my suggestion that we implement and adhere to a bright-line rule which distinguishes residential and commercial property in the context of Article II, Section 10 of our Constitution. I believe that there is no expectation of privacy in one's garbage disposed of in an open dumpster on commercial property. I would hold that the police did not need a search warrant prior to searching the contents of the trash.

_____

**PETRA JIMENEZ MAES, Justice**

**I CONCUR:**

_____

**CHARLES W. DANIELS, Justice**

**APPENDIX**

*State v. Crane*, 2011-NMCA-061, 149 N.M. 674, 254 P.3d 117

**DISSENTING OPINION**

**WECHSLER, Judge (dissenting).**

**{28}** I do not believe that, as an extension of Granville, "society is prepared to recognize as reasonable" the privacy expectation in this case. *Granville*, 2006-NMCA-098, ¶ 11.

**{29}** In *Granville*, this Court addressed the issue of "whether Article II, Section 10, of the New Mexico Constitution prohibits the warrantless search of an individual's garbage bags placed in trash containers located in an alley behind a residence" where the defendant resided. *Granville*, 2006-NMCA-098, ¶¶ 1, 3. We concluded that "an individual in New Mexico has a reasonable expectation of privacy in his garbage placed for collection in an opaque container." *Id*. ¶ 33. The issue before us in this case is whether this constitutional protection extends beyond the facts of *Granville* to garbage placed in a motel dumpster.

**{30}** I do not believe that there is a reasonable expectation of privacy in these circumstances. I do not reach this view because such garbage does not reveal the individual's private matters or that an individual can have a reasonable expectation of privacy in garbage placed for collection in an opaque container; these were predicate propositions of *Granville*. Nor do I reach this conclusion because a motel guest does not have a privacy interest in a motel room; a motel guest has the same rights concerning the search of the room that apply to the search of a residence. *See Zamora*, 2005-NMCA-039, ¶ 14. Rather, I arrive at my conclusion because I believe that, when viewed objectively, a motel guest does not have a reasonable expectation of privacy in garbage placed outside of the motel room in a dumpster.

**{31}** First, in my opinion, a dumpster in a parking lot cannot reasonably be viewed as part of the motel room. I consider the general and reasonable expectation for garbage disposal in a motel room to be that the guest would deposit the garbage in a trash container provided by the motel in the room. A motel room is different from a residence in this regard. At a residence, as indicated by *Granville*, the resident has the responsibility to place the garbage at the collection point outside of the residence. *Granville*, 2006-NMCA-098, ¶ 32. Thus,

15

I do not consider cases such as *Zamora* that draw a parallel between a motel room and a residence for search and seizure purposes to control this case.

**{32}** Second, I view the issue, at least in part, as one of control. An individual who disposes of garbage outside a residence, as in *Granville*, has nearly full control of the garbage until it is collected. That is, the individual has not ceded control, and if the individual chooses to retrieve items placed for collection, there is not difficulty in doing so. On the other hand, an individual placing garbage in a dumpster at a motel does not have the same level of control; it is significantly more difficult to retrieve garbage because it is intermingled with garbage that did not originate from the individual. Moreover, the motel, which has no relation to the individual for this purpose, has overall control of the dumpster and the collection of garbage within it. *See Granville*, 2006-NMCA-098, ¶ 31 (adopting the reasoning of *State v. Galloway*, 109 P.3d 383 (Or. Ct. App. 2005), that when an individual makes arrangements for collection of garbage, the individual has a reasonable expectation the collection will take place as arranged). An individual disposing of garbage in this manner has ceded control of it and has placed the garbage beyond the individual's zone of privacy.

**{33}** I thus do not believe that a motel guest has a reasonable expectation of privacy in garbage disposed of in the motel's dumpster outside of the guest's room and respectfully dissent from the opinion of the Court.

**JAMES J. WECHSLER, Judge**